UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:04CV-81-R


CECIL MCMURTRY, M.D.                                                              PLAINTIFF

v.

STEVEN F. BOTTS, THOMAS A. WISEMAN, III,
EDWARD A. HADLEY and
GIDEON & WISEMAN, a Tennessee partnership                              DEFENDANTS

## MEMORANDUM OPINION

Defendant Botts has moved for summary judgment (Dkt. # 19).  Plaintiff responded (Dkt.

# 48), Defendants replied (Dkt. # 51) and this matter is now ripe for decision.  For the reasons

given below, Defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

This case arises out of a disability insurance policy purchased by Emergicare, Inc. on

behalf of its then-employee, Plaintiff Cecil McMurtry, M.D. ("Dr. McMurtry").  Emergicare

purchased the plan in 1985 from Paul Revere Insurance Company ("Paul Revere"), a company

for which defendant Steven F. Botts ("Mr. Botts") worked.  At the time, both Dr. McMurtry and

Mr. Botts were living and working in Tennessee; Mr. Botts obtained a license to sell insurance in

Kentucky a few months after the transaction, in October of 1985.  The policy provided disability

insurance at various levels to Dr. McMurtry for the rest of his life, including a rider specifically

geared toward providing compensation should Dr. McMurtry become totally disabled and

thereby unable to perform his occupation - emergency room physician.  Initially, the "own

occupation" rider limited those payments to situations in which Dr. McMurtry was both not

1

employed as an emergency room doctor *and* not otherwise employed.  Dr. McMurtry sustained a back injury in October of 1987 for which he underwent surgery; after a brief recovery, he returned to full-time work as an emergency room physician.  In 1989, Dr. McMurtry purchased from Mr. Botts a "rider" to his disability insurance policy which essentially allowed him to recover under the "own occupation" provision while continuing to work at a different job. Between 1987 and 1991, Dr. McMurtry suffered from recurring back problems, and in March 1991 he submitted a claim under the Paul Revere policy for total disability benefits going forward and partial disability benefits for the previous three months.  He also notified Paul Revere that he was working part time as a physician at various clinics.

Paul Revere paid benefits under the policy from that point forward until November, 1994, when it determined that Dr. McMurtry was only entitled to residual disability, as opposed to total disability, under the policy, apparently because he was working as a physician at the time.  Dr. McMurtry disputed this change, and eventually filed suit in Kentucky state court against Paul Revere, presenting claims of violations of Kentucky contract law.  Defendants Wiseman, Hadley, and Gideon & Wiseman represented Dr. McMurtry in that case, which Paul Revere ultimately removed to the United States District Court for the Western District of Kentucky. Ultimately the contract law claims were dismissed, but Dr. McMurtry was allowed to proceed with ERISA claims.  The District Court found in Dr. McMurtry's favor and awarded him total disability benefits payments for life.

In an opinion issued on June 12, 2000, the Sixth Circuit Court of Appeals overturned this portion of the District Court's ruling, holding that Dr. McMurtry was not entitled to total disability benefits after age 65 under the plain language of the policy.  The Court of Appeals also

remanded the case for the District Court to make a determination of attorney's fees in a manner consistent with the appeals court's opinion. The Court of Appeals did not explicitly address Dr. McMurtry's claim for estoppel, as authorized by ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a)(3)(B). Dr. McMurtry petitioned for rehearing, raising this issue and arguing that the panel's remand order was too limited in that it authorized district court action on the issue of attorney's fees only. The petition was denied, and on remand, the District Court granted McMurtry part of his requested attorney fees and then granted the defendants' summary judgment motion on the estoppel claim. Dr. McMurtry appealed the summary judgment, and the Sixth Circuit Court of Appeals upheld the denial on law of the case grounds; i.e., on the grounds that the earlier Sixth Circuit opinion did not grant the District Court authority to entertain Dr. McMurtry's estoppel claim in its limited remand. *McMurtry v. Paul Revere Life Ins. Co.*, 67 Fed. Appx. 290 (6th Cir. 2003). That unpublished opinion was issued on May 28, 2003. On May 6, 2004, Dr. McMurtry, having obtained new counsel, filed the instant lawsuit in this court. The Complaint contains claims against Mr. Botts as well as against Dr. McMurtry's attorneys in the above-described case, Mr. Wiseman, Mr. Hadley, and the law firm of Gideon & Wiseman, a Tennessee partnership (collectively, the "Attorney Defendants"). (Complaint, Dkt. # 2, at 10-12). As to Mr. Botts, Dr. McMurtry presents claims for breach of contract, fraud, negligence, negligent misrepresentation, and violations of (1) the Kentucky Consumer Protection Act (KRS § 367.110 *et seq.*) or Tennessee's Consumer Protection Act (T.C.A. § 47-18-104 *et seq.*), and (2) Kentucky's Unfair Claims Settlement Practices Act (KRS. § 304.12-230(1)). *Id.* Dr. McMurtry's complaint further asserts claims against the Attorney Defendants in that, he argues, their failure to raise the claims asserted in this suit against Mr. Botts in the original suit

3

constituted a breach of their representation contract, breach of a duty of care, and negligent failure to supervise Mr. Hadley. Mr. Botts moved for summary judgment on personal jurisdiction and statute of limitations grounds.  (Dkt. # 19).

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case."  *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of the evidence.  To support his position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant

4

to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)."  *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

*A.  Personal Jurisdiction*

Mr. Botts argues that, because he does not have the minimum contacts with Kentucky contemplated by Supreme Court jurisprudence, this court lacks the personal jurisdiction required for adjudication of the case.  Dr. McMurtry argues that he "responded to those issues on January 7, 2005" and that "the Court overruled that aspect of Defendant's Motion."  (Plaintiff's Response to Motion for Summary Judgment, Dkt. # 48, at p. 7.)  The Court's order on January 18, 2005 (Dkt. # 30), ruling on Dr. McMurtry's Motion for Extension of Time to File Response/Reply (Dkt. # 25) and Motion to Continue (Dkt. # 26), granted those motions in light of the then-upcoming deposition of Mr. Botts.  However, the Court did *not* rule on the substance of the Motion for Summary Judgment, either on personal jurisdiction or on statute of limitations grounds.

As the Sixth Circuit Court of Appeals has held, "[a] federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction if (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment."  *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980); and *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220,

5

224 (6th Cir.1972)).   Because Mr. Botts is not a Kentucky domiciliary, the Court must look to

Kentucky's long-arm statute to evaluate the first prong of this test.  Kentucky's long-arm statute,

KRS § 454.210, extends to the outer limits of constitutional due process, so the exercise of

personal jurisdiction over Mr. Botts need only meet the requirements of the federal Constitution.

*Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002).

     The basic rule governing these due process requirements is that, to exercise jurisdiction

over a defendant who is not physically present in the forum, that defendant must "have certain

minimum contacts with [the forum] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61

S.Ct. 339, 85 L.Ed. 278 (1940)).  In this context, a defendant has "minimum contacts" when "the

Defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).  A requirement of this conduct is that the

defendant have "purposefully avail[ed] itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357

U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958).  As the Supreme Court has

further explained:

     This "purposeful availment" requirement ensures that a defendant will not be haled into a
     jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the
     unilateral activity of another party or a third person.  Jurisdiction is proper, however,
     where the contacts proximately result from actions by the defendant himself that create a
     substantial connection with the forum State.  Thus where the defendant deliberately has
     engaged in significant activities within a State, or has created continuing obligations
     between himself and residents of the forum, he manifestly has availed himself of the
     privilege of conducting business there, and because his activities are shielded by the

6

benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks, citations and footnotes omitted).

The Supreme Court has also described two types of jurisdiction sufficient to give rise to personal jurisdiction for due process purposes: "general" and "specific" jurisdiction.  Specific jurisdiction describes the situation in which the defendant's contacts with the forum state are related to or form the basis of the case in question.  *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).  General jurisdiction exists "when the defendant's contacts with the forum state are substantial and continuous and systematic, so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state."  *Youn*, 324 F.3d 418. The *Youn* court usefully summarized the test for specific personal jurisdiction:

> in *Southern Machine Co. v. Mohasco Industries, Inc.*, this Court established a three-part test for determining whether, consistent with due process, a court may exercise specific personal jurisdiction: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.*, quoting *Southern Machine Co. v. Mohasco Industries, Inc.***,** 401 F.2d 374, 381 (6th Cir. 1968) (internal citation and quotation marks omitted).  In the case at bar, personal jurisdiction over Mr. Botts can only be available if it is general; the requirements for specific personal jurisdiction are not met.  Because Mr. Botts was not licensed to do business in Kentucky until *after* the activities which gave rise to this cause of action (the selling of the policy to Dr.

7

McMurtry), the second prong of the *Southern Machine Co.* test cannot be satisfied; the causes of action against Dr. McMurtry cannot have arisen from his activities in Kentucky.

The question, then, is whether general jurisdiction exists and gives the Court jurisdiction over Mr. Botts in this action.  The activities that constitute Mr. Botts's contact with Kentucky are sufficient to constitute the minimum contacts needed to satisfy the due process clause.  For nearly thirty years, Mr. Botts has been licensed in the Commonwealth of Kentucky to sell life and health insurance since October 1, 1985.  Plaintiff asserts, and Mr. Botts does not deny, that he has transacted and continues to transact business here.  As an initial matter, this case raises a somewhat peculiar issue, however: would the general personal jurisdiction resulting from such activities reach back to grant jurisdiction over cases arising out of activities undertaken *before* the forum state acquired such jurisdiction?  The Court believes that it does, for the reasons described in the opinion of the District of Utah:

> Defendants argue that only contacts occurring prior to the event causing the litigation may be considered in determining general jurisdiction.  This misses the point of general jurisdiction. General jurisdiction focuses on the fairness of subjecting a person, or a corporation, to all suits of any kind in the place where the person or corporation is domiciled, headquartered, or otherwise engaging in continuous and systematic activities. The important time for assessing this type of presence is at the time of suit, not years earlier, or years later. The defendants cite several cases in support of their proposition. However, all of them deal with specific, rather than general, jurisdiction. As noted above, specific jurisdiction requires quite a different analysis from general jurisdiction. The Second Circuit summarized the difference as follows: Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general contacts.'

*Haas v. A.M. King Industries, Inc.*, 28 F.Supp.2d 644, 648-49 (D. Utah 1998), *quoting*

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (*quoting Helicopteros*

*Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984))

(internal quotation marks, citations and footnotes omitted).  Therefore, if Mr. Botts has, prior to the filing of this lawsuit, had contacts with the Commonwealth of Kentucky sufficient to establish general jurisdiction, then the fact that they did not occur prior to the activities which gave rise to this particular case should be no bar to the exercise of jurisdiction.

The two major Supreme Court cases applying the law of general jurisdiction are *Perkins v. Benguet Consol. Mining Co.* and *Helicopteros Nacionales de Colombia, S.A. v. Hall*. The *Helicopteros* court summarized the *Perkins* case as follows:

> In *Perkins*, the Court addressed a situation in which state courts had asserted general jurisdiction over a defendant foreign corporation. During the Japanese occupation of the Philippine Islands, the president and general manager of a Philippine mining corporation maintained an office in Ohio from which he conducted activities on behalf of the company. He kept company files and held directors' meetings in the office, carried on correspondence relating to the business, distributed salary checks drawn on two active Ohio bank accounts, engaged an Ohio bank to act as transfer agent, and supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines. In short, the foreign corporation, through its president, "ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general business," and the exercise of general jurisdiction over the Philippine corporation by an Ohio court was "reasonable and just."

446 U.S. 408, 414-415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *quoting* 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952).  The *Helicopteros* court was faced with the Texas Supreme Court's attempt to exercise this type of jurisdiction, which the *Helicopteros* court termed "general" jurisdiction, over a Colombian company, Helicopteros Nacionales de Colombia, S.A. ("Helicol"), being sued on claims which the parties agreed did not arise out of nor were they related to the company's activities in Texas.  *Id.* at 415.  The court summarized the company's contacts with the state of Texas as follows:

> It is undisputed that Helicol does not have a place of business in Texas and never has been licensed to do business in the State. Basically, Helicol's contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation

9

session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training.

*Id.* at 416.  The court ultimately held that these contacts were not sufficient to constitute the "continuous and systematic" contacts contemplated in *Perkins*.  *Id.* at 415.

Although the Court has not been given specific facts about the entire extent of Mr. Botts's contacts with the Commonwealth of Kentucky since 1985, it is undisputed that he has been licensed here continuously since that time and has sold policies in Kentucky.  Therefore, he has sought the protection of the laws of the Commonwealth and subjected himself to the jurisdiction of its courts.  The fact, then, that at least some of the claims in this case are based on actions not related to his contacts with Kentucky does not prevent this Court from exercising personal jurisdiction over Mr. Botts.

B.  *Statutes of Limitations*

Mr. Botts further challenges Plaintiff's claims on the grounds that they have not been prosecuted within the time periods set forth in the applicable statutes of limitations.  As an initial matter, the parties disagree about whether Kentucky's or Tennessee's statutes apply in this case. The crux of their disagreement, however, stems from the issue of what event triggers the running of the statutes and, collaterally, what effect the earlier litigation, including the appeals to the Sixth Circuit, have on the applicable statutes of limitation.  Plaintiff asserts that "statutes of limitation do not start to run until the harm from improper conduct becomes fixed and non-speculative."  (Plaintiff's Response to Motion for Summary Judgment, Dkt. # 48, at 7).  Plaintiff goes on to state that "[i]n professional misconduct cases, damages become fixed and non-speculative upon final resolution of any underlying judicial proceeding."  *Id.* at 8.  For this

10

proposition, Plaintiff cites a case involving a malpractice suit against an attorney, *Hibbard v. Taylor*. 837 S.W.2d 500 (Ky. 1992).  While this makes sense in an attorney malpractice context, the Court fails to see its application in the case of Mr. Botts.  Defendants, for their part, claim that the statute of limitations should begin to run on the date on which the conduct - here, Mr. Botts's sale of the policy to Dr. McMurtry and his attendant representations, which is in 1985. This also seems counter-intuitive in that it would require Dr. McMurtry to anticipate that Paul Revere would deny coverage and to know that the statements from Mr. Botts upon which he allegedly relied were not in accord with the policy.  The Court believes that the event which caused the harm from the improper conduct to become fixed was Paul Revere's decision to stop paying benefits on Dr. McMurtry's coverage.[1]  The record indicates that event occurred on March 1, 1996; therefore, the statutes of limitations period for each claim will be calculated from this date.

This brings the analysis to the question of which statutes of limitations govern Dr. McMurtry's claims against Mr. Botts.  Because jurisdiction in this case is based on the Court's diversity jurisdiction, a choice of law issue arises.  We must first determine whether Kentucky's "borrowing statute" applies to this case.  That statute provides:

> When a cause of action has arisen in another state or country, and by the laws of this state or country where the cause of action accrued the time for the commencement of an action thereon is limited to a shorter period of time than the period of limitation prescribed by the laws of this state for a like cause of action, then said action shall be barred in this state at the expiration of said shorter period.

---

[1]It was at this point in time that Dr. McMurtry decided to challenge Paul Revere's interpretation of the policy; the Court notes that Dr. McMurtry's claims against the Attorney Defendants in this case stem from their allegedly negligent decision not to include Mr. Botts in the suit filed at that time, so Dr. McMurtry's position on this point is inconsistent.

11

KRS § 413.320.  In accordance with the Sixth Circuit's interpretation of Kentucky's borrowing statute, by which the Court is bound, the determination of whether the borrowing statute applies rests entirely on the determination of where the causes of action accrued.  *Combs v. International Ins. Co.*, 354 F.3d 568 (6th Cir. 2004).  Although the alleged harm from Mr. Botts's actions did not become fixed until Paul Revere denied coverage in 1996, all of Mr. Botts's actions occurred in Tennessee; therefore, for choice of law purposes, the claims all accrued in Tennessee.  Under KRS § 413.320, then, where Tennessee's statutes of limitations provide a shorter time than Kentucky's, Tennessee's govern; where they do not, Kentucky's govern.

As to Dr. McMurtry's claims for fraud and negligent misrepresentation, it appears that Kentucky applies a five (5) year statute of limitations.  KRS § 413.120(12) and 413.130. Tennessee's statutes of limitation provide three (3) years (Tenn. Code Ann. § 28-3-105); since the Tennessee period is shorter, Kentucky's borrowing statute dictates that the three-year period applies.  Because the case was brought more than three years after March 1, 1996, these claims against Mr. Botts are barred by the statutes of limitations.   As to Dr. McMurtry's negligence claim, the analysis is similar; Kentucky law provides a five (5) year statute of limitations for actions not otherwise governed by a statute of limitations; in Tennessee, negligence actions are governed by either a one (1) or three (3) year statute of limitations, depending on whether the injury was to the person or to property.  Tenn. Code Ann. §§ 28-3-104(a)(1) and 28-3-105.  It appears that Dr. McMurtry's claims constitute injury to property, triggering the three-year statute of limitations; in either case, the Tennessee statute provides for a time period shorter than Kentucky's, triggering the borrowing statute.  Dr. McMurtry's negligence claim has not been brought within the applicable statute of limitations.

As to Dr. McMurtry's breach of contract claim, KRS § 413.120(1) provides a five (5) year statute of limitations for claims for breach of an unwritten contract; Tenn. Code Ann. § 28-3-109(a)(3) provides a six (6) year limit for any claim for breach of a contract. (Although there was a written insurance agreement, Plaintiff's breach of contract claim stems from an alleged oral agreement between himself and Mr. Botts about what kind of insurance agreement Mr. Botts would draw up.) Under either statute, the breach of contract claim was not timely brought. Dr. McMurtry also alleged in his Complaint violations of the Kentucky Consumer Protection Act (KRS § 367.110 *et seq.*) or Tennessee's Consumer Protection Act (Tenn.Code Ann. § 47-18-104 *et seq.*). For purposes of this motion, the Court need not decide which statute applies; KRS § 367.220(5) provides a two (2) year statute of limitations and Tenn. Code Ann. provides that: "[a]ny action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief." Under either statute, Dr. McMurtry's action is barred by the applicable statute of limitations. Finally, Dr. McMurtry alleges a claim under Kentucky's Unfair Claims Settlement Practices Act (KRS. § 304.12-230(1)). Although it is not clear whether KRS 304.12-230 applies to the transaction in question since the sale took place in Tennessee, any such claim is barred on statute of limitations grounds because it is required to have been brought within five (5) years pursuant to KRS 413.120(2).

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED**. An appropriate order shall issue.