UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:04CV-81-R

CECIL MCMURTRY, M.D.                                                                                PLAINTIFF

v.

STEVEN F. BOTTS, THOMAS A. WISEMAN, III,
EDWARD A. HADLEY and
GIDEON & WISEMAN, a Tennessee partnership                                         DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Summary Judgment (Docket #55).  The Plaintiff has responded (Docket #62), and the Defendants have replied to that response (Docket #68).  This matter is now ripe for adjudication.  For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case arises out of a disability insurance policy purchased by Emergicare, Inc. on behalf of its then-employee, Plaintiff Cecil McMurtry, M.D. ("Dr. McMurtry").  Emergicare purchased the plan in 1985 from Paul Revere Insurance Company ("Paul Revere"), a company for which defendant Steven F. Botts ("Botts") worked.  At the time, both Dr. McMurtry and Mr. Botts were living and working in Tennessee; Mr. Botts obtained a license to sell insurance in Kentucky a few months after the transaction, in October of 1985.  The policy provided disability insurance at various levels to Dr. McMurtry for the rest of his life, including a rider specifically geared toward providing compensation should Dr. McMurtry become totally disabled and thereby unable to perform his occupation - emergency room physician.  Initially, the "own occupation" rider limited those payments to situations in which Dr. McMurtry was both not

employed as an emergency room doctor *and* not otherwise employed.  Dr. McMurtry sustained a back injury in October of 1987 for which he underwent surgery; after a brief recovery, he returned to full-time work as an emergency room physician.  In 1989, Dr. McMurtry purchased from Mr. Botts a "rider" to his disability insurance policy which essentially allowed him to recover under the "own occupation" provision while continuing to work at a different job.  Between 1987 and 1991, Dr. McMurtry suffered from recurring back problems, and in March 1991 he submitted a claim under the Paul Revere policy for total disability benefits going forward and partial disability benefits for the previous three months.  He also notified Paul Revere that he was working part time as a physician at various clinics.

Paul Revere paid benefits under the policy from that point forward until November, 1994, when it determined that Dr. McMurtry was only entitled to residual disability, as opposed to total disability, under the policy, apparently because he was working as a physician at the time.  Dr. McMurtry disputed this change, and eventually filed suit in Kentucky state court against Paul Revere, presenting claims of violations of Kentucky contract law.  Defendants Wiseman, Hadley, and Gideon & Wiseman represented Dr. McMurtry in that case, which Paul Revere ultimately removed to the United States District Court for the Western District of Kentucky.  Ultimately the contract law claims were dismissed, but Dr. McMurtry was allowed to proceed with the ERISA claims.  The District Court found in Dr. McMurtry's favor and awarded him total disability benefits payments for life.

In an opinion issued on June 12, 2000, the Sixth Circuit Court of Appeals overturned this portion of the District Court's ruling, holding that Dr. McMurtry was not entitled to total disability benefits after age 65 under the plain language of the policy.  The Court of Appeals also

remanded the case for the District Court to make a determination of attorney's fees in a manner consistent with the appeals court's opinion. The Court of Appeals did not explicitly address Dr. McMurtry's claim for estoppel, as authorized by ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a)(3)(B). Dr. McMurtry petitioned for rehearing, raising this issue and arguing that the panel's remand order was too limited in that it authorized district court action on the issue of attorney's fees only. The petition was denied, and on remand, the District Court granted McMurtry part of his requested attorney fees and then granted the defendants' summary judgment motion on the estoppel claim. Dr. McMurtry appealed the summary judgment, and the Sixth Circuit Court of Appeals upheld the denial on law of the case grounds; i.e., on the grounds that the earlier Sixth Circuit opinion did not grant the District Court authority to entertain Dr. McMurtry's estoppel claim in its limited remand. *McMurtry v. Paul Revere Life Ins. Co.*, 67 Fed. Appx. 290 (6th Cir. 2003). That unpublished opinion was issued on May 28, 2003.

On May 6, 2004, Dr. McMurtry, having obtained new counsel, filed the instant lawsuit in this Court. The Complaint contains claims against Mr. Botts as well as against Dr. McMurtry's attorneys in the above-described case, Mr. Wiseman, Mr. Hadley, and the law firm of Gideon & Wiseman, a Tennessee partnership (collectively, the "Defendants"). (Complaint, Dkt. # 2, at 10-12). The claim against Mr. Botts was dismissed by this Court in a Memorandum Opinion upon Mr. Botts' Motion for Summary Judgment (Docket #59).

In Dr. McMurtry's case against the "Attorney" Defendants he argues that their failure to raise the claims asserted in this suit against Mr. Botts in the original suit constituted a breach of their representation contract, breach of a duty of care, and negligent failure to supervise Mr. Hadley. The Defendants argue that in order for Dr. McMurtry to succeed on his claims against

them for legal malpractice, Dr. McMurtry must show that claims against Mr. Botts for: breach of contract, fraud, negligence, negligent misrepresentation, and violations of (1) the Kentucky Consumer Protection Act (KRS § 367.110 *et seq.*) or Tennessee's Consumer Protection Act (T.C.A. § 47-18-104 *et seq.*), and (2) Kentucky's Unfair Claims Settlement Practices Act (KRS. § 304.12-230(1)), would have succeeded should the Attorney Defendants have filed those claims against Mr. Botts at the original trial.  In his response Dr. McMurtry acknowledges that Tennessee law governs the claims regarding Mr. Botts, and therefore has waived the claims that Mr. Botts violated the Kentucky Consumer Protection Act and the Kentucky Unfair Claims Settlement Practices Act.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of the evidence.  To support his position, he must present evidence on which the trier of

fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

In Kentucky, in order for a plaintiff to prevail on a legal malpractice claim, the plaintiff must prove: 1) that there was an employment relationship with the defendant/attorney; 2) that the attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and 3) that the attorney's negligence was the proximate cause of damage to the client. *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) citing *Stephens v. Denison*, 64 S.W.3d 297, 298-99 (Ky. App. 2001). Essentially, a legal malpractice claim is a "suit within a suit" because the plaintiff must "show that he/she would have fared better in the underlying claim; that is, but for the attorney's negligence, the plaintiff would have been more likely successful." *Marrs*, 95 S.W.3d at 860, citing RONALD E. MALLEN & JEFFREY M. SMITH, *LEGAL MALPRACTICE*, § 33.8 (5th ed.2000). As such, the Court will address each claim that Dr. McMurtry argues that the Defendants should have brought against

Mr. Botts.

### *Accruing of the Statute of Limitations...*

In their Motion for Summary Judgment, the Defendants claim that many of the causes of action against Botts would have failed as a matter of law because the statute of limitations would have expired prior to the alleged claim. The Defendants submitted their Motion for Summary Judgment on September 2, 2005, approximately twenty-six (26) days before this Court entered its Memorandum Opinion on September 28, 2005 (Docket #59). The Memorandum Opinion determined that Dr. McMurtry's causes of actions against Botts accrued on March 1, 1996; the day in which the Defendants began their representation of Dr. McMurtry. In their motion, the Defendants argue that the proposed causes of action against Botts accrued in 1985. As such, all of the Defendants' arguments as to Dr. McMurtry's claims against Botts regarding the expiration of statute of limitations, other than the Tennessee Consumer Protection Act claim, fail because of they are now moot based on the prior decision of this Court. Therefore, this Court finds that Dr. McMurtry's claims against Mr. Botts would not have been barred by the statute of limitations.

### *Breach of Contract Claim...*

Dr. McMurtry asserts that the Defendants should have sued Botts individually for breach of contract, contending that Botts contracted with Dr. McMurtry to deliver a policy with lifetime benefits and subsequently failed to deliver the policy. The Defendants argue that this cause of action lacks legal merit because there was no written or verbal contract between Dr. McMurtry and Botts. Dr. McMurtry counters that Botts made a contract with him through the two policy proposals and that Botts did not solely act for Paul Revere. Although the Plaintiff argues that factual issues exist as far as whether or not Botts and Dr. McMurtry formed a contract, the Court

must ultimately look to see whether Botts could legally form a contract individually with Dr. McMurtry based on the transaction in question. In order for the Court to come to this conclusion it must analyze whether Botts acted under the scope of his employment with Paul Revere during the course of the transaction because whether or not he fell under that scope will determine if the contract made with Dr. McMurtry was with Botts individually or with Paul Revere.

Under Tennessee law, the standard for determining whether or not an employee acts within the scope of his/her employment or individually for insurance coverage purposes is synonymous to the analysis used to establish whether or not an employer is vicariously liable for the acts of his/her employee under the doctrine of respondeat superior. *TN Farmers Mutual Ins. Co. v. American Mutual Liability Ins. Co.*, 840 S.W.2d 933, 936-7 (Tenn. Ct. App. 1992). In order for a party to prove that an employee acted within the scope of his/her employment for purposes of vicarious liability, the party must show: 1) the person who caused the injury was an employee; 2) that the employee was on the employee's business; and 3) that the employee was acting within the scope of his/her employment when the injury occurred. *Hamerick v. Spring City Motor Company*, 708 S.W.2d 383, 386 (Tenn. 1986). Tennessee recognizes the Restatement (Second) of Agency §228 (1957) as the test to show whether an employee acts within the scope of employment. It provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
> a) it is the kind he is employed to perform;
> b) it occurs substantially within the authorized time and space limits;
> c) it is actuated, at least in part, by a purpose to serve the master; and
> d) if force is intentionally used by the servant against another, the use of force is not unexpectable to the master.

*TN Farmers Mutual Ins. Co.*, 840 S.W.2d at 938.

Though the Plaintiff argues that an issue of fact exists as far as the formation of the

7

contract, and determining whether or not an employee acts within the scope of his/her employment is a question of fact, the facts regarding the scope of the employment are undisputed and differ from the issue of whether or not a contract between the Plaintiff and Botts existed.  At the time the insurance policy was signed by the Plaintiff in 1985, Botts was a statutory W-2 employee of Paul Revere.  Botts was housed in a Paul Revere office.  The forms on which the policy was signed were Paul Revere forms.  In his deposition, Dr. McMurtry admits that no document indicates a contract between Botts and him was made, stating in his deposition "I don't think Steve Botts would do that working for an insurance company.  I think he would be a representative of this country - - company." Deposition of Dr. Cecil McMurtry, pg. 134.

 In applying these undisputed facts to the standard recognized by Tennessee, Botts was well within the scope of his employment when he had Dr. McMurtry sign the insurance policy in 1985.  Botts was employed by Paul Revere to act as their representative in the sale of insurance policies.  In addition, the sale of the policy by Botts took place to serve his employer, Paul Revere.  As such, any contract formed at that time with Dr. McMurtry was with Paul Revere and not Botts as an individual.  To hold that Botts could enter into a contract on behalf of his employer as well as himself based upon the same transaction goes counter to basic contractual principles, especially since this Court has determined that at the time the Policy was signed Botts acted within the scope of his employment.  Although misleading statements or actions by Botts may go to a claim of negligent misrepresentation or fraud, they do not support the premise that Botts entered into a contract individually with Dr. McMurtry while under the scope of employment with Paul Revere concerning the same transaction.  Therefore, this Court finds that the breach of contract claim against Botts would fail as a matter of law and that the claim lacks

viability for purposes of a legal malpractice action.

### *Fraud (Intentional Misrepresentation) Claim...*

The Plaintiff claims that the Defendants were negligent when they failed to sue Botts for fraud (intentional misrepresentation) because Botts knew that the Policy he delivered to Dr. McMurtry did not have lifetime benefits should the Plaintiff become disabled at work due to injury; Botts fraudulently contradicted himself when he testified in the underlying litigation that the Policy provided the Plaintiff with benefits until the age of 65; and Botts intentionally altered the Policy knowing that he had no authority to do so and that the Plaintiff would rely upon it. The Defendants argue that this claim would fail as a matter of law because the Defendants could not have proven all of the elements of fraud in order sustain a cause of action against Botts. Specifically, the Defendants assert that the first element of fraud, proof of intentional misrepresentation, could not have been proven because the testimony of Dr. McMurtry negated it when he expressed that Botts would not lie and that Botts did not make a fraudulent claim to him.      The Plaintiff counters by contending that Botts authored and altered the Policy purchased by Dr. McMurtry. The Plaintiff argues that this included the deletion of the clause that would have prevented Dr. McMurtry from collecting own occupation benefits after the age of 65 in the initial proposal, while at the same time Botts represented that the Plaintiff would receive lifetime own benefit coverage. Further, both parties contend that sale of the Rider H779 rather than the Rider H789 helps their respected cases. On the one hand, the Plaintiff claims that the lack of the sale of the Rider 789 to Dr. McMurtry shows how Botts committed fraud, and then attempted to cover it up by not addressing it in the underlying litigation, which the Plaintiff argues would have saved him on the cost of litigation over a period of seven (7) years. On the

other hand, the Defendants argue that Dr. McMurtry did not qualify for it, and even if Botts had sold it to the Plaintiff he still would not have qualified as "totally disabled" under the Rider 789.

Both parties cite the Tennessee Court of Appeals case of *Stack v. Saunders* to find the elements of a fraud action in Tennessee. The Court stated that:

> [t]he basic elements for a fraud action are: (1) an intentional misrepresentation with regard to a material fact, *Keith v. Murfreesboro Livestock Market, Inc.*, 780 S.W.2d 751 (Tenn.Ct.App.1989); (2) knowledge of the representation falsity-that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, *Tartera v. Palumbo*, 224 Tenn. 262, 266-67, 453 S.W.2d 780, 782 (1970); (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, *Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 927 (Tenn.Ct.App.1987); *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (Tenn.Ct.App.1976); and (4) that the misrepresentation relates to an existing or past fact, *Haynes*, 546 S.W.2d at 232, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise," *Keith*, 780 S.W.2d at 754, citing *Brungard v. Caprice Wreckers, Inc.*, 608 S.W.2d 585, 590 (Tenn.Ct.App.1980).

*Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. App.1990).

In proving the first element, the Plaintiff argues that the intentional misrepresentation by Botts occurred: when Botts failed to inform Dr. McMurtry about the own occupation benefits ceasing after age 65; when Botts sold Dr. McMurtry a policy that Botts knew Paul Revere would never deliver to the Plaintiff; and when Botts advised Dr. McMurtry that the Plaintiff could receive disability benefits even if he worked in a medical speciality other than emergency medicine. The Defendants contend that the Plaintiff speculates in as far as showing that Botts intended to defraud Dr. McMurtry. They cite the testimony of the Plaintiff where he describes Botts positively and states that he thinks Botts would not lie or make a fraudulent claim to show that the fraud claim against Botts would not have been viable as a matter of law.

Though the Defendants argue that the Plaintiff cannot show any evidence that Botts

10

intentionally made a misrepresentation, the alleged actions of Botts put forth by Dr. McMurtry raise questions concerning the nature of his conduct. In particular, Botts' behavior during the sale of the Policy to the Plaintiff in 1985, the advice Botts gave to Dr. McMurtry when the Plaintiff submitted his claim for total disability, and Botts' inaction during the underlying litigation leave room for interpretation as to whether or not Botts intentionally misrepresented material facts of the Policy to Dr. McMurtry. At this juncture, the Court feels that these questions concerning the actions of Botts should go to the finder of fact to determine whether or not they constituted intentional misrepresentation.

Based upon alleged conduct by Botts the remaining elements of the fraud claim should also go to the finder of fact. In looking at the second element and applying his actions, a jury could reasonably conclude that Botts made the representation to Dr. McMurtry with a reckless disregard to their truthfulness. The third element requiring that a plaintiff rely upon the representation could reasonably be met by Dr. Mc McMurtry through his affidavit and response to interrogatories where the Plaintiff stated that he relied upon the representations by Botts when making his decision to purchase the Policy and file a claim on it. Lastly, in looking at the fourth element, the alleged misrepresentation relates to past facts concerning the sale of the Policy, advice given to the Plaintiff by Botts, and Botts' conduct during the underlying litigation.

The Court notes that in Tennessee employers generally cannot be held liable for the intentional torts committed by their employees unless the employer directly contributes, encourages or ignores the tortious conduct of the employee within the scope of his/her employment. *Raines v. Shoney's, Inc.*, 909 F.Supp.1070, 1082 (E.D.TN.1995) *citing Loveman v. Bayless*, 160 S.W. 841, 842 (Tenn. 1913) and *McInturff v. White*, 565 S.W.2d 478, 482

11

(Tenn.1976); *Browne v. Signal Mountain Nursery, L.P.*, 286 F.Supp.2d 904, 911-12 (E.D.TN 2003). As such, even though Botts fell under the scope of employment with Paul Revere while transacting with Dr. McMurtry, the intentional tort of fraud would not necessarily impute the liability of Paul Revere. Further, the Defendants have offered no evidence to support that Paul Revere should have been held accountable for the actions of Botts. Therefore, this Court finds that the finder of fact should determine whether the fraud (intentional misrepresentation) claim against Botts would have more likely than not succeeded should the Defendants had brought the claim against Botts at the time of the underlying litigation.

### *Negligence Claim...*

The Plaintiff claims that the Defendants should have sued Botts individually for negligence because he negligently sold and delivered a policy to the Plaintiff that he knew or should have known had no life time benefits. The Defendants argue that under the theory of respondeat superior any personal negligence that the Plaintiff alleges Botts committed would be imputed to his employer, Paul Revere, because the conduct in question took place during the scope of Botts' employment with Paul Revere.

As analyzed *supra*, the Court determined that Botts acted under the scope of his employment with Paul Revere during his transactions with Dr. McMurtry. As noted by the Court, "[t]he general rule in Tennessee is that a principal is liable for the negligence or wrongful acts of his agent acting within the actual or apparent scope of his employment in the principal's service." *Willis v. Settle*, 162 S.W.3d 169, 182 (Tenn.Ct.App. 2004) *citing* 1 Tenn. Juris., Agency, § 47 (1982); *V.L. Nicholson Co. v. Transcon Inv. and Financial Ltd., Inc.*, 595 S.W.2d 474, 483 (Tenn.1980); *McGee v. County of Wilson*, 574 S.W.2d 744, 746-47

(Tenn.Ct.App.1978). In the instant matter, Botts acted under the scope of his employment with Paul Revere when he worked with Dr. McMurtry. Any charge claiming negligence as a cause of action was properly brought against Paul Revere in the underlying litigation as the employer of Botts, and not against Botts in his individual capacity. Therefore, this Court finds that the negligence claim against Botts would fail as a matter of law and that the claim lacks viability for purposes of a legal malpractice action.

### *Negligent Misrepresentation Claim...*

The Plaintiff claims that the Defendants should have sued Botts individually for negligent misrepresentation because Botts negligently misrepresented the terms of the Policy. The Defendants argue that Dr. McMurtry cannot demonstrate that Botts individually represented to Dr. McMurtry any untrue or misleading statements concerning the Policy. The Defendants further argue that the Plaintiff admitted in his testimony that Botts did not individually make any promises, contentions or representations, and that respondeat superior should impute the claim against Paul Revere, but not Botts individually.

> In Tennessee, to prove a claim of negligent misrepresentation, a plaintiff must show:
>
> (1) the defendants were acting in the course their business, profession, or employment; (2) that they supplied false information for the guidance of others; (3) that they failed to exercise reasonable care in obtaining or communicating that information; (4) that the plaintiff justifiably relied on the information; and (5) that he suffered damages as a result.

Restatement (Second) of Torts, § 552 (1977); *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn.1997); Staggs v. Sells, 86 S.W.3d 219, 223 (Tenn.Ct.App.2001); *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn.Ct.App.1991). As determined *supra*, the Court has held that elements (1), (2) and (4) could go before the finder of fact because based on the evidence and

13

facts presented a jury could reasonably find that Botts may have committed fraud against Dr. McMurtry.  In looking at element (3), the standard of care for negligent misrepresentation is a lower standard than fraud, and as determined *supra*, the Court permitted that element to go to the finder of fact for consideration as well.  As such, element (3) should go forward for a jury to decide.  In his complaint, Paragraphs 59-64 outline the alleged damages sustained by the Plaintiff, and this list satisfies the initial proof needed by the Plaintiff to permit element (5) to go to the finder of fact for consideration.

The Defendants do not address the specific elements of negligent misrepresentation in their motion for summary judgment.  The facts and arguments offered by the Defendants do not refute the elements of this claim because even the Defendants acknowledge that Dr. McMurtry believed that Botts made representations to him concerning the Policy as described in Plaintiff's Exhibit A.  Further, in contrast to the claim for negligence, under Tennessee law a plaintiff may sue an individual defendant for negligent misrepresentation even if the defendant acted within the scope of his/her employment because an element of negligent misrepresentation requires that the defendant act within his/her employment. *Robinson*, 952 S.W.2d at 427.  Though held to the same standard of care as a claim for negligence, negligent misrepresentation does not impute to the employer when the action is committed by the employee.  Therefore, this Court finds that the finder of fact should determine whether the negligent misrepresentation claim against Botts would have more likely than not succeeded should the Defendants had brought the claim against Botts at the time of the underlying litigation.

### *Tennessee Consumer Protection Act Claim...*

The Plaintiff claims that the Defendants were negligent because they should have sued

Botts for violating the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Annotated §47-18-104 *et seq.*, arguing that Botts' conduct was unfair, false, misleading, deceptive and unconscionable. The Defendants argue that the statute of limitations had expired on this claim at the time of the underlying proceeding and that because of this the Plaintiff's claim fails as a matter of law. The Defendants cite Tennessee Code Annotated §47-18-110 that states:

> Any action commenced pursuant to §47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under §47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief.

The Defendants contend that because they were not substituted as Dr. McMurtry's attorneys until February 1996, more than eleven (11) years after the initial 1985 transaction, and six (6) years after the five (5) year tolling and expiration period of the statute of limitations for a TCPA violation. The Plaintiff counters offering the case of *Bernard v. Houston Ezell Corp.*, asserting that because Botts concealed his misconduct the tolling of the statute of limitations did not start until later than the Defendants claim. *Bernard v. Houston Ezell Corp.*, 968 S.W.2d 855, 860 (Tenn. App. 1997). The Defendants replied to the Plaintiff's response arguing that even if *Bernard* controls in this matter that Plaintiff did not meet its standard to toll the statute of limitations for Botts because the Plaintiff has produced no factual evidence that Botts continued to affirmatively conceal the cause of action.

> In *Bernard*, the Tennessee Court of Appeals held:
>
> [t]he fact that plaintiffs did not discover a fraud does not itself toll the statute of limitations. There must be continued affirmative, fraudulent concealment of the cause of action by defendant. In addition, the defendant must know that the plaintiff has a cause of action and *must conceal it in such a fashion that, even if plaintiff were diligent, he would not be able to discover it.* Phillips v. Phillips, 526 S.W.2d 439 (Tenn.1975).

*Bernard*, 968 S.W.2d at 860 (emphasis added).  As applied to the instant matter, the facts offered by the Plaintiff would not sustain the standard expressed by the Tennessee Court of Appeals. Although Botts may have possibly attempted to conceal any wrongful involvement on his part concerning the sale of the Policy to Dr. McMurtry, the Plaintiff could have discovered any possible concealment if he had searched diligently for it.  As such, the statute of limitations for a violation of the Tennessee Consumer Protection Act expired in 1990, six (6) years before the Defendants took on the underlying litigation.   Therefore, this Court finds that the Tennessee Consumer Protection Act claim against Botts would fail as a matter of law and that the claim lacks viability for purposes of a legal malpractice action.

### *Negligently failed to raise three issues in their Motion for Summary Judgment claim...*

The Plaintiff claims that the Defendants breached their duty of care by failing to raise three arguments in the Motion for Summary Judgment they filed on behalf of the Plaintiff on April 3, 1998.  In particular, the Plaintiff argues that the Defendants should have argued: that the "table of additional benefits in the Policy schedule contained no maximum benefit period;" that the "plaintiff had a premium waiver in effect on his 65th birthday;" and that "Botts acted with either actual or apparent authority when he altered the policy provisions."  The Defendants argue that all of these claims fail as a matter of law on causation grounds and the terms of the Policy. The Plaintiff contends that at this point the matters are not ripe to be decided by the Court.  The Defendants counter that argument by noting that other than the complaint listing the claims that the Plaintiff alleges the Defendants should have made in the motion for summary judgment, the Plaintiff has offered nothing to back up these assertions.  The Court shall address each claim individually.

1.  Table of additional benefits in the Policy schedule contained no maximum benefit period

The Defendants assert that they should have argued that the Policy contained a maximum benefit period because in doing so they claimed the maximum benefit period would be for life and the Policy explicitly stated that there was a maximum benefit period.  This argument offered by the Defendants in the underlying litigation succeeded at the trial court level and persuaded the Court to grant the motion to award Dr. McMurtry lifetime benefits.  The Plaintiff offers no rebuttal to this argument in his response.  As such, the Court agrees with the Defendants especially in light of the fact that the Policy states there was a maximum benefit period and that the Plaintiff has offered no evidence to show how and why their alleged argument would have succeeded.  Therefore, this Court finds that the Plaintiff's claim fails as a matter of law.

2. The Plaintiff had a premium waiver in effect on his 65th birthday

The Defendants point out that the critical issue concerning a premium waiver under the Policy came when Paul Revere, not the Defendants, determined that the Plaintiff no longer qualified as "totally disabled" under the Policy and changed his status to "residually disabled," which meant that the Plaintiff would no longer qualify for benefits after he turned 65 years old. The Plaintiffs do not challenge this assertion in their response. As such, the Court agrees with the Defendants that the critical point in the premium ending was the decision by Paul Revere to change the classification of disability of the Plaintiff.  The Defendants properly litigated this matter at the time, and had they made the argument requested by the Plaintiff it would have been erroneous.  Therefore, this Court finds that the Plaintiff's claim fails as a matter of law.

3. Botts acted with either actual or apparent authority when he altered the policy provisions

The Defendants argue that in order to prove actual or apparent authority they would have

17

had to establish that Paul Revere "actually or negligently acquiesced in Botts' exercise of authority." *White v. Methodist Hosp*., 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992).  Therefore, the Plaintiff must show that Paul Revere gave Botts the authority to alter the terms of the Policy.  Here, not only has the Plaintiff offered no evidence to establish this authority granted to Botts by Paul Revere, but also the Plaintiff has not established as a matter of law that Botts' markings altered the terms of the Policy.  In his response to the Defendants' Motion for Summary Judgment the Plaintiff did not address this matter.  Therefore, this Court finds that the Plaintiff's claim fails as a matter of law.

### *Negligent Supervision Claim...*

The Plaintiff claims that Defendant Wiseman and Gideon & Wiseman failed to adequately supervise their employee, associate Hadley, because Hadley did not attempt to litigate the seven (7) alleged causes of actions against Botts brought forward in the instant matter.  The Plaintiff asserts that had Hadley been properly supervised then he would have pursued the claims.  The Defendants argue that negligent supervision claim fails because Wiseman, a partner in the firm, and not Hadley, an associate, made the final decision about what to do about Botts in the underlying litigation.  The Plaintiff does not contest this fact in his response.  Further, in their reply the Defendants contend that the Plaintiff failed address this matter in his response, and that therefore the claim should be dismissed as a matter of law.

The only facts provided to the Court on this claim come from Defendants.  They offer proof that Wiseman, and not Hadley, made the final decisions regarding the strategic litigation of the case.  Further, the Defendants provide quotes from Dr. McMurtry that suggest the Plaintiff did not feel that Wiseman and the law firm failed to supervise Hadley.  This evidence taken

alone, as well as the fact that the Plaintiff does not address this matter in his response, lead the Court to find that the negligent supervision claim in favor of the Defendants because the Plaintiff has not met his initial burden of supporting his contention with facts, evidence or law. Therefore, this Court finds that the negligent supervision claim alleged by the Plaintiff lacks viability and fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. The claims alleging that the Defendants should have sued Botts in his individual capacity for fraud and negligent misrepresentation shall go before the finder of fact, and all other claims are dismissed.

An appropriate order shall issue.