UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:04CV-81-R

CECIL MCMURTRY, M.D.                                                                                                  PLAINTIFF

v.

THOMAS A. WISEMAN, III,
EDWARD A. HADLEY and
GIDEON & WISEMAN, a Tennessee partnership
DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion for Reconsideration (Docket #105). The Plaintiff has responded to the Defendant's motion (Docket #146). This matter is now ripe for adjudication. For the following reasons, Defendants' Motion for Reconsideration is **DENIED**.

## BACKGROUND

This case arises out of a disability insurance policy purchased by Emergicare, Inc. on behalf of its then-employee, Plaintiff Cecil McMurtry, M.D. ("Dr. McMurtry"). Emergicare purchased the plan in 1985 from Paul Revere Insurance Company ("Paul Revere"), a company for which defendant Steven F. Botts ("Botts") worked. At the time, both Dr. McMurtry and Mr. Botts were living and working in Tennessee; Mr. Botts obtained a license to sell insurance in Kentucky a few months after the transaction, in October of 1985. The policy provided disability insurance at various levels to Dr. McMurtry for the rest of his life, including a rider specifically geared toward providing compensation should Dr. McMurtry become totally disabled and thereby unable to perform his occupation - emergency room physician. Initially, the "own

occupation" rider limited those payments to situations in which Dr. McMurtry was both not employed as an emergency room doctor *and* not otherwise employed.  Dr. McMurtry sustained a back injury in October of 1987 for which he underwent surgery; after a brief recovery, he returned to full-time work as an emergency room physician.  In 1989, Dr. McMurtry purchased from Mr. Botts a "rider" to his disability insurance policy which essentially allowed him to recover under the "own occupation" provision while continuing to work at a different job.  However, the rider explicitly stated that the rider would cease when the policy ends or after the Plaintiff turns 65 years old (which ever happens first).  Between 1987 and 1991, Dr. McMurtry suffered from recurring back problems, and in March 1991 he submitted a claim under the Paul Revere policy for total disability benefits going forward and partial disability benefits for the previous three months.  He also notified Paul Revere that he was working part time as a physician at various clinics.

     Paul Revere paid benefits under the policy from that point forward until November, 1994, when it determined that Dr. McMurtry was only entitled to residual disability, as opposed to total disability, under the policy, apparently because he was working as a physician at the time.  Dr. McMurtry disputed this change, and eventually filed suit in Kentucky state court against Paul Revere, presenting claims of violations of Kentucky contract law.  Defendants Wiseman, Hadley, and Gideon & Wiseman represented Dr. McMurtry in that case, which Paul Revere removed to the United States District Court for the Western District of Kentucky.  Ultimately, the contract law claims were dismissed, but Dr. McMurtry was allowed to proceed with the ERISA claims.  The District Court found in Dr. McMurtry's favor and awarded him total disability benefits payments for life.

In an opinion issued on June 12, 2000, the Sixth Circuit Court of Appeals overturned this portion of the District Court's ruling, holding that Dr. McMurtry was not entitled to total disability benefits after age 65 under the plain language of the policy.  The Court of Appeals also remanded the case for the District Court to make a determination of attorney's fees in a manner consistent with the appeals court's opinion.  The Court of Appeals did not explicitly address Dr. McMurtry's claim for estoppel, as authorized by ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a)(3)(B).  Dr. McMurtry petitioned for rehearing, raising this issue and arguing that the panel's remand order was too limited in that it authorized district court action on the issue of attorney's fees only.  The petition was denied, and on remand, the District Court granted McMurtry part of his requested attorney fees and then granted the defendants' summary judgment motion on the estoppel claim.  Dr. McMurtry appealed the summary judgment, and the Sixth Circuit Court of Appeals upheld the denial on law of the case grounds; i.e., on the grounds that the earlier Sixth Circuit opinion did not grant the District Court authority to entertain Dr. McMurtry's estoppel claim in its limited remand.  *McMurtry v. Paul Revere Life Ins. Co.*, 67 Fed. Appx. 290 (6th Cir. 2003).  That unpublished opinion was issued on May 28, 2003.

On May 6, 2004, Dr. McMurtry, having obtained new counsel, filed the instant lawsuit in this Court.  The Complaint contains claims against Mr. Botts as well as against Dr. McMurtry's attorneys in the above-described case, Mr. Wiseman, Mr. Hadley, and the law firm of Gideon & Wiseman, a Tennessee partnership (collectively, the "Defendants").  (Complaint, Dkt. # 2, at 10-12).  The claim against Mr. Botts was dismissed by this Court in a Memorandum Opinion upon Mr. Botts' Motion for Summary Judgment (Docket #59).

On January 17, 2006, this Court granted in part and denied in part the Defendants'

3

Motion for Summary Judgment, finding that all the claims Dr. McMurtry alleges should have been filed against Botts in his individual capacity would have failed as a matter of law, except for the state law claims of fraud and negligent misrepresentation.  In their Motion for Reconsideration, the Defendants contend that the negligent misrepresentation claim should have been dismissed as a matter of law because it would have been imputed to Botts' employer, Paul Revere.  The Plaintiff argues that even if the agent is acting within the scope of his employment, negligent misrepresentation is not automatically imputed to the employer.

## STANDARD

The court may grant a motion to alter or amend, pursuant to Federal Rule of Civil Procedure 59(e), "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law or to prevent manifest injustice." *GenCorp v. American International*, 178 F.3d 804, 834 (6th Cir.1999) (internal citations omitted).  "[C]ourts typically will consider additional evidence accompanying a Rule 59(e) motion only when it has been newly discovered, and that to [c]onstitute 'newly discovered evidence,' the evidence must have been previously unavailable." *GenCorp*, 178 F.3d at 834.  A FRCP 59(e) motion to alter does not provide the Plaintiff another opportunity to argue the merits of their case. *GenCorp* at 834.

## DISCUSSION

Both parties in the instant matter agree that Botts was acting within the scope of his employment with Paul Revere at the time of his dealings with Dr. McMurtry.  In the Defendants' motion for reconsideration, they contend that under the holding in *Robinson v. Omer*, negligent misrepresentation automatically imputes to the employer, and therefore, precludes a plaintiff from suing an employee as a matter of law.  *Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997).

In *Robinson*, the Court stated that employers/principals may be held liable for the actions of their employees/agents acting within the scope of their employment for a claim of negligent misrepresentation. *Robinson* at 427.  Though liability may impute to the employer, *Robinson* does not stand for the proposition that a claim for negligent misrepresentation against an agent is precluded as a matter of law if the agent is acting within the scope of his/her employment. *Id.* This same interpretation may be applied to the Tennessee Court of Appeals' holding in *Staggs v. Sells*, where the Court held that an employer may be liable under a claim of negligent misrepresentation for the actions of its employees; however, the Court in *Staggs* did not determine that a claim for negligent misrepresentation against the individual employee acting within the scope of his/her employment was precluded as a matter of law. *Staggs v. Sells*, 86 S.W.3d 219, 223 (Tenn. Ct. App. 2001).  Meanwhile, in his response, the Plaintiff categorized a claim for negligent misrepresentation as an intentional tort; however, negligent misrepresentation is not an intentional tort, as it imposes a duty on an agent to exercise reasonable care or competence, and does not require that he/she intend to provide false information. *Restatement 2nd of Torts, § 552*.

In situations where an agent may commit negligent misrepresentation, most plaintiffs would likely bring suit against the employer/principal as a matter of economics.   This leaves open the issue as to whether or not a plaintiff in such a situation may bring a suit against an employee/agent individually for negligent misrepresentation even if the agent acted within the scope of his/her employment.

In *Brungard v. Caprice Records, Inc.*, a plaintiff brought suit against a corporation and one of its agents alleging that they committed false misrepresentation; this is now known as

5

negligent misrepresentation.[1] *Brungard v. Caprice Records, Inc.* 608 S.W.2d 585, 588 (Tenn. App.1980). At the time of the incident, the Court determined that the agent was acting within the scope of his employment. *Id.* In looking at the claim against the agent individually, the Court noted that:

> **[i]t is settled law that an agent cannot escape liability for tortious acts, including fraud and misrepresentation, against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer.**

*Brungard* at 590. The Court in *Brungard* ultimately held that the agent could be individually liable for false misrepresentation. *Id.*

Fifteen years later in *Brandon v. Winnett*, the Tennessee Court of Appeals, in quoting *Brungard*, held that Winnett, a defendant in the matter acting as an agent for the company, could be held individually liable for negligent misrepresentation even if he was acting within the scope of his employment and the company was also found liable for negligent misrepresentation. *Brandon v. Winnett*, 1995 WL 444385, *7 (Tenn. App. 1995.).[2] Accordingly, the Defendants could have brought a claim against Botts individually regarding negligent misrepresentations he allegedly made to Dr. McMurtry to induce him into joining the ERISA plan, even though he was

---

[1]The standard for a claim of "false misrepresentation," in this matter, as stated by the Court, are: "One, who in the course of his business, profession or employment, or a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information if he fails to exercise reasonable care or competence in obtaining or communicating the information," which is the equivalent of the modern day tort of negligent misrepresentation, adopted by Tennessee as stated in the Restatement 2d. of Torts §552. *Brungard*, 608 S.W. 2d at 588.

[2]In *Brandon*, the Court stated that the standard for a claim of "negligent misrepresentation" consists of: "One who, in the course of his business, profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

acting within the scope of his employment.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to reconsider is **DENIED**.

An appropriate order shall issue.