UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:04CV-81-R

CECIL MCMURTRY, M.D.                                                                                              PLAINTIFF

v.

THOMAS A. WISEMAN, III,
EDWARD A. HADLEY and
GIDEON & WISEMAN, a Tennessee partnership
DEFENDANTS

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on the Plaintiff's motion to bifurcate under Federal Rule of Civil Procedure ("FRCP") 42 (Docket #139). The Defendants' have responded. (Docket #169). This matter is now ripe for adjudication. For the following reasons, the Plaintiff's motion to bifurcate is **GRANTED**. Accordingly, abiding by the "case within a case" format for legal malpractice actions, the underlying claims for fraud, negligence and negligent misrepresentation against Steven Botts shall proceed first, followed by the professional negligence case against the Defendants for their alleged legal malpractice.

## DISCUSSION

FRCP 42 states that: "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim...or of any separate issue...or issues." The Sixth Circuit Court of Appeals has recognized that courts have broad discretion in determining whether or not to bifurcate a case, especially in dealing with matters of liability and damages. *See Gafford v. General Elec. Co.* 997 F.2d 150, 172 (6th Cir. 1993); *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir.1988). However, the Sixth Circuit has not explicitly addressed this matter in the context of a legal

malpractice case.

In *Nat'l Union Fire Ins. Co. v. Dowd & Dowd, P.C.*, 191 F.R.D. 566, 567-68 (N.D. Ill. 1999), the Court held that the case should *not* be bifurcated in that matter because "the issues of liability and damages are closely intertwined." The Court in *Dowd* explained that because the concern in that matter was whether the plaintiff would have been found liable for $8 million in damages if the defendant attorney had not acted in a negligent manner during the course of the trial, the issues were related and need not be bifuracted. *Id.* The Court distinguished that matter from *Graefe v. Connolly*, 1987 WL 4854 (N.D. Ill. 1987) and *Overbey v. Jones*, 1992 WL 223852 (D. Kan. 1992), stating that in those cases the court could separate the liability and damages, and thus properly bifurcated those legal malpractice claims. As explained by the Court:

> In those bifurcated legal malpractice cases in which the underlying action was tried first, the malpractice plaintiff had also been the plaintiff in the underlying case, and the alleged act of malpractice was that the accused attorney had missed a statute of limitations or had otherwise failed to prosecute the case, preventing it from ever being tried. Thus, in order to determine if the attorney's error caused any damages, the court had to determine first if the underlying action had merit. If the plaintiff could not have recovered in the underlying suit, it suffered no damages from its attorney's error. And the question of whether the underlying suit had merit was not affected by the attorney's alleged malpractice for failing to prosecute.

*Id.*

In *Graefe*, the case involved a suit by plaintiff clients alleging that their former attorney failed to file a finance statement in connection with the sale of their business, claiming they lost $123,665.00 due to the attorney's omission. *Graefe* at *1. The difference between *Graefe* and *Dowd* is that in *Graefe* the plaintiff needed to demonstrate the lost opportunity by arguing the merits of that particular claim for the first time **verses** a definite and set verdict in *Dowd*, where

the clients claim they were liable for $8 million due to the alleged negligence of the attorney during the course of the trial. In addition, the case in *Dowd* involved tactics used by the attorney during the course of the trial, in contrast to the matter in *Graefe*, where the attorney's omission led to the lost benefits.

In *Overbey*, the United States District Court for the District of Kansas addressed whether or not it should try the underlying claim of medical malpractice first followed by the legal malpractice claim, or whether the claim should not have been bifurcated. *Overbey* at *1. The Court ultimately held that the claim should be bifurcated in order to determine the validity of the medical malpractice claim. *Id.* The Court reasoned that bifurcating the claims "would advance the interests of economy and efficiency...[i]t would allow trial of a central issue of the plaintiff's case...[i]t would not cause delay, since the remaining portions of the plaintiff's case could be presented closely upon the decision of the jury with respect to the issue of medical malpractice." *Id*. The basis of the legal malpractice claim in *Overbey* was that the attorney had "deprived his client of a right of action" for failure to file certain state law causes of actions in the underlying claim. *Id.* at *2. The Court noted in that matter that bifurcation would "'further convenience, avoid delay and prejudice, and serve the ends of justice.'" *Id.* (*quoting* FRCP 42(b)).

Similar to *Graefe*, *Overbey* can be distinguished from the matter in *Dowd* for the same reasons of lost opportunity and omission by the defendant attorney. Essentially, the purpose of the bifurcation in those matters was to determine the legitimacy of the underlying claim had it been brought in the *first place*, in contrast to *Dowd*, where the legal malpractice matter concerned examining the actions by the defendant attorney in the underlying litigation.

Other courts have bifurcated the underlying action from the legal malpractice claim in

3

similar situations as the courts in *Graefe* and *Overbey*.  In *Nika v. Danz*, the Illinois Court of Appeals affirmed the decision by the trial court to bifurcate the case. *Nika v. Danz*, 556 N.E.2d 873, 881-882 (Ill. App. 1990).  However, in *Nika*, a case where the plaintiff alleged that the attorney was negligent in failing to file a personal injury action in his initial case, the Court permitted the legal malpractice claim to be tried first, and tried the underlying claim after the negligence of the attorney was determined.[1]  In *Cook v. Continental Casualty Company*, the Wisconsin Court of Appeals bifurcated a legal malpractice case where the plaintiff alleged that the attorney defendant was negligent for failing to identify certain fact witnesses, and for failing to call them for his case-in-chief in the underlying products liability action. *Cook v. Continental Casualty Company*, 509 N.W.2d 100, 104-05 (Wis. Ct. App. 1993).  The Court determined that the legal malpractice claim should go first, followed by the underlying claim. *Id.* at 103-04.

Another case that supports bifurcation in legal malpractice actions is the Wisconsin Supreme Court case of *Lewandowski v. Continental Casualty Co.*, 276 N.W.2d 284 (Wis. 1979). In *Lewandowski*, the plaintiff client filed a malpractice claim against an attorney defendant who had failed to file a personal injury action regarding an auto accident within the applicable limitations period. *Id.* at 285.  Though the attorney admitted to negligence in missing the filing period, he denied that his negligence had caused any damage to the plaintiff asserting that the plaintiff had contributed to the underlying negligence. *Id.*  The trial court tried the underlying case first, and the jury determined that the plaintiff was 65% negligent in causing the underlying car accident. *Id.* at 286.  The plaintiff appealed the decision of the trial court, and on review, the Wisconsin Supreme Court held:

---

[1]The Court did not express a reason as to why the legal malpractice case was tried first.

4

> [u]nder the facts of this case it is our conclusion that the trial court chose the appropriate methodology to resolve the issue in this case. In the final analysis, whether the [plaintiff-client] had been damaged by the [defendant-attorney's] failure to timely file suit against [the other driver] could only be determined after a trial involving the question of whether the negligence of [the other driver] was greater than that of [the plaintiff-client].

*Id.* at 289.  Similar reasoning was used by the Alabama Supreme Court in *Johnson v. Horne*, where the Alabama Supreme Court determined that the trial court did not err when it separated the legal malpractice claim from the underlying claim of an automobile accident where the defendant attorney had missed the deadline for filing the case. *Johnson v. Horne*, 500 So. 2d 1024, 1025 (Ala. 1986).  The trial court in *Johnson* ordered that the underlying case to be tried first in order to determine whether the plaintiff client was entitled to recover, reasoning that the result of the underlying suit would show whether the alleged negligence of the attorney was harmless or not. *Id.*[2]

Ronald Mallen and Jeffrey Smith, in their Treatise on Legal Malpractice, seem to advocate bifurcating legal malpractice claims, stating:

> The standard of care is an issue distinct and separate from the issue of what should have happened in the underlying proceeding. Separate trials can provide a cogent and clear evidentiary process, reducing the risk of confusing a jury...[t]he failure of the plaintiff to prevail on one phase of the trial may enable a motion for nonsuit or judgment to avoid the expense of a full trial. An adverse result on one issue against the attorney may encourage settlement of the action then. Further, the effect of prejudicial and inflammatory evidence can be limited to the issue or issues on which it is relevant by bifurcating the trial...Without bifurcation, all instructions would be presented at once to the jury, increasing the risk of confusion. Bifurcation enables the jury to be presented with the instructions concerning the particular phase of the underlying case.

---

[2]Following this case, the Alabama State Legislature mandated the following: "(a) If the liability to damages of a legal services provider is dependent in whole or in part upon the resolution of a underlying action, the outcome of which is either in doubt or could have been affected by the alleged breach of the legal services provider standards of care, then, in that event, the court shall upon the motion of the legal services provider, order the severance of the underlying action for separate trial." Ala. Code 1975 § 6-5-579.

Ronald Mallen and Jeffrey Smith, Treatise on Legal Malpractice, Chapter 33.26, *Bifurcation of the Issues*, 4 Legal Malpractice § 33.26 (2006 ed.). Mallen and Smith cite the case of *Kearns v. Horsley* in demonstrating jurisdictions that support bifurcating legal malpractice claims. *Kearns v. Horsley*, 552 S.E.2d 1 (N.C. App. 2001). In *Kearns*, the plaintiff client alleged that the defendant attorneys failed to assert her negligence claim within the applicable statute of limitations, though the attorney defendants argued that her claim was not time barred. *Id.* at 3. Following a mistrial at the first legal malpractice hearing, the trial court bifurcated the second hearing ordering that the plaintiff be required to first prove that her "'original claim was valid and would have resulted in a judgment in her favor against (General Cinemas,)' before she would be allowed to present evidence of the defendants' negligence in prosecuting that claim." *Id.* Aside from noting the traditional reasons in favor of bifurcation, the Court also noted that the matter involved the law of two (2) states, with the underlying matter involving New Jersey law, and the legal malpractice matter involving North Carolina law. *Id.*

> The North Carolina Court of Appeals upheld the decision to bifurcate, holding:
>
> [i]n this case the determination of the first of these three things [the underlying action,] would require the application of the laws of the State of New Jersey, while the remaining issues in this case [, the legal malpractice claim,] would involve the application of the laws of the State of North Carolina. The Court, in its discretion finds and concludes that in furtherance of convenience and to avoid prejudice in this matter, that the issues of whether the plaintiff's original claim was valid and would have resulted in a judgment in her favor against the original party should be tried separately from the other issues in this matter.

*Id.* at 7.

In the instant matter, the facts surrounding the case favor bifurcating the underlying claim from the legal malpractice claim. Although similar testimony and evidence may come in both cases, the two cases vary in both law and nature. The underlying case involves claims of fraud,

negligence and negligent misrepresentation under Tennessee law, seeking to determine whether Botts was liable, while the legal malpractice claim applies a negligence standard under Kentucky law seeking to determine whether Wiseman and Hadley violated the standard of care in their professional legal capacities.  Requiring a jury to adjudicate these issues together would lead to confusion because of the distinct differences of the cases.  Similar to *Kearns*, the Court in this matter is dealing with different state laws in each action, which favors a bifurcation of the matter in order to avoid confusion.

In addition, by bifurcating this matter and hearing the underlying case first, the Court would be abiding by the precedent set forth in *Dowd* (in dicta), *Chaefe*, *Overbey*, *Lewandowski*, *Johnson*, and *Kearns*.  In this case, similar to those matters, a plaintiff client alleges that the defendant attorneys failed to assert and/or file a claim against a third party.  Further, in order to determine whether this omission would entitle the plaintiff to any damages, it must first be decided whether or not the plaintiff would have recovered anything from the underlying claim.  The resolution of the underlying claim would thus determine how the case should proceed to the legal malpractice phase of the trial.

Significant in determining bifurcation and the order of presentation is the consideration that certain evidence that is relevant to the legal malpractice case is not relevant to the underlying case, and is not admissible in the underlying action.  Both parties have proffered, without objection, expert testimony concerning the advisability and viability of the state law claims in the underlying action.  However, these testimonies are inadmissible in the underlying case.   Accordingly, this matter will be bifurcated, with the underlying case against Botts being tried first, followed by the case against the Defendants for legal malpractice.

**IT SO ORDERED:**

The Plaintiff's Motion to Bifurcate is **GRANTED**.