UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:04CV-81-R

CECIL MCMURTRY, M.D.                                                    PLAINTIFF

v.

THOMAS A. WISEMAN, III,
EDWARD A. HADLEY and
GIDEON & WISEMAN, a Tennessee partnership
DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' Second Motion for Summary

Judgment (Docket #89).  The Plaintiff has responded (Docket #91), and the Defendants have

replied to that response (Docket #106).  This matter is now ripe for adjudication.  For the

following reasons, Defendants' Motion for Summary Judgment is **DENIED**.

## BACKGROUND

This case arises out of a disability insurance policy purchased by Emergicare, Inc. on

behalf of its then-employee, Plaintiff Cecil McMurtry, M.D. ("Dr. McMurtry").  Emergicare

purchased the plan in 1985 from Paul Revere Insurance Company ("Paul Revere"), a company

for which defendant Steven F. Botts ("Botts") worked.  At the time, both Dr. McMurtry and Mr.

Botts were living and working in Tennessee; Mr. Botts obtained a license to sell insurance in

Kentucky a few months after the transaction, in October of 1985.  The policy provided disability

insurance at various levels to Dr. McMurtry for the rest of his life, including a rider specifically

geared toward providing compensation should Dr. McMurtry become totally disabled and

thereby unable to perform his occupation - emergency room physician.  Initially, the "own

occupation" rider limited those payments to situations in which Dr. McMurtry was both not

employed as an emergency room doctor *and* not otherwise employed.  Dr. McMurtry sustained a back injury in October of 1987 for which he underwent surgery; after a brief recovery, he returned to full-time work as an emergency room physician.  In 1989, Dr. McMurtry purchased from Mr. Botts a "rider" to his disability insurance policy which essentially allowed him to recover under the "own occupation" provision while continuing to work at a different job. However, the rider explicitly stated that the rider would cease when the policy ends or after the Plaintiff turns 65 years old (which ever happens first).  Between 1987 and 1991, Dr. McMurtry suffered from recurring back problems, and in March 1991 he submitted a claim under the Paul Revere policy for total disability benefits going forward and partial disability benefits for the previous three months.  He also notified Paul Revere that he was working part time as a physician at various clinics.

Paul Revere paid benefits under the policy from that point forward until November, 1994, when it determined that Dr. McMurtry was only entitled to residual disability, as opposed to total disability, under the policy, apparently because he was working as a physician at the time.  Dr. McMurtry disputed this change, and eventually filed suit in Kentucky state court against Paul Revere, presenting claims of violations of Kentucky contract law.  Defendants Wiseman, Hadley, and Gideon & Wiseman represented Dr. McMurtry in that case, which Paul Revere removed to the United States District Court for the Western District of Kentucky.  Ultimately, the contract law claims were dismissed, but Dr. McMurtry was allowed to proceed with the ERISA claims.  The District Court found in Dr. McMurtry's favor and awarded him total disability benefits payments for life.

In an opinion issued on June 12, 2000, the Sixth Circuit Court of Appeals overturned this

portion of the District Court's ruling, holding that Dr. McMurtry was not entitled to total

disability benefits after age 65 under the plain language of the policy. The Court of Appeals also

remanded the case for the District Court to make a determination of attorney's fees in a manner

consistent with the appeals court's opinion. The Court of Appeals did not explicitly address Dr.

McMurtry's claim for estoppel, as authorized by ERISA's civil enforcement provisions, 29

U.S.C. § 1132(a)(3)(B). Dr. McMurtry petitioned for rehearing, raising this issue and arguing

that the panel's remand order was too limited in that it authorized district court action on the

issue of attorney's fees only. The petition was denied, and on remand, the District Court granted

McMurtry part of his requested attorney fees and then granted the defendants' summary

judgment motion on the estoppel claim. Dr. McMurtry appealed the summary judgment, and the

Sixth Circuit Court of Appeals upheld the denial on law of the case grounds; i.e., on the grounds

that the earlier Sixth Circuit opinion did not grant the District Court authority to entertain Dr.

McMurtry's estoppel claim in its limited remand. *McMurtry v. Paul Revere Life Ins. Co.*, 67

Fed. Appx. 290 (6th Cir. 2003). That unpublished opinion was issued on May 28, 2003.

On May 6, 2004, Dr. McMurtry, having obtained new counsel, filed the instant lawsuit in

this Court. The Complaint contains claims against Mr. Botts as well as against Dr. McMurtry's

attorneys in the above-described case, Mr. Wiseman, Mr. Hadley, and the law firm of Gideon &

Wiseman, a Tennessee partnership (collectively, the "Defendants"). (Complaint, Dkt. # 2, at 10-

12). The claim against Mr. Botts was dismissed by this Court in a Memorandum Opinion upon

Mr. Botts' Motion for Summary Judgment (Docket #59).

On January 17, 2006, this Court granted in part and denied in part the Defendants'

Motion for Summary Judgment, finding that all the claims Dr. McMurtry alleges should have

3

been filed against Botts in his individual capacity would have failed as a matter of law, except for the state law claims of fraud and negligent misrepresentation.  In their Second Motion for Summary Judgment, the Defendants now contend: 1) that ERISA laws would have preempted the state law claims of fraud and negligent misrepresentation against Botts in his individual capacity because they were related to the recovery of benefits under the original ERISA litigation; 2) that Botts was not an appropriate party in the underlying litigation; and 3) Hadley made no decisions and had no authority in dealing with the Plaintiff's case, and therefore should be dismissed from the claim as a matter of law.  The Plaintiff asserts that ERISA would not have preempted the state law claims because a suit against Botts would not have been directly related to recovery under ERISA, and that Hadley had a duty under law and the Code of Professional Responsibility to bring suit against Botts regardless of the fact that Wiseman was his supervisor, and therefore, he should remain a defendant in this litigation.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the

4

party bearing the burden of proof has presented a jury question as to each element in the case."
*Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere
scintilla of the evidence.  To support his position, he must present evidence on which the trier of
fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52
(1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere
existence of a colorable factual dispute will not defeat a properly supported motion for summary
judgment.  A genuine dispute between the parties on an issue of material fact must exist to
render summary judgment inappropriate."  *Monette v. Electronic Data Systems Corp.,* 90 F. 3d
1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant
to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the
standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in
*Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)."  *Gafford v. General
Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

In Kentucky, in order for a plaintiff to prevail on a legal malpractice claim, the plaintiff
must prove: 1) that there was an employment relationship with the defendant/attorney; 2) that the
attorney neglected his duty to exercise the ordinary care of a reasonably competent attorney
acting in the same or similar circumstances; and 3) that the attorney's negligence was the
proximate cause of damage to the client. *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) citing
*Stephens v. Denison*, 64 S.W.3d 297, 298-99 (Ky. App. 2001).  Essentially, a legal malpractice
claim is a "suit within a suit" because the plaintiff must "show that he/she would have fared
better in the underlying claim; that is, but for the attorney's negligence, the plaintiff would have

been more likely successful." *Marrs*, 95 S.W.3d at 860, citing RONALD E. MALLEN &

JEFFREY M. SMITH, *LEGAL MALPRACTICE*, § 33.8 (5th ed.2000).  As such, the Court will

address the state law claims for fraud and negligent misrepresentation that the Defendants argue

would have been preempted by ERISA, whether Botts would have been a proper party in the

underlying litigation, and whether Defendant Hadley should be dismissed from the litigation,

separately.

### *Whether the State Law Claims of Fraud and Negligent Misrepresentation would have been preempted by ERISA*

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to

any employee benefit plan." 29 U.S.C. § 1144(a).  The United States Supreme Court and Sixth

Circuit Court of Appeals have held that under 29 U.S.C. §1144(b), an ERISA action preempts

state law claims by beneficiaries who sue for the recovery of benefits in connection with an

ERISA plan. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 737-738 (1985); *Pilot

Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987) *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67

(6th Cir. 1988); *McMahan v. New England Mut. Life Ins. Co.*, 888 F.2d 426, 428-29 (6th

Cir.1989); *Ruble v. UNUM Life Ins. Co. of America*, 913 F.2d 295, 297 (6th Cir. 1990);

*Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275-76 (6th Cir.1991), *cert. denied*,

505 U.S. 1233 (1992).  In order to determine whether or not a state law claim is preempted by 29

U.S.C. § 1144(a), the Court must find that the claim is "related to" the recovery under the ERISA

plan.  In looking at whether a state law claim relates to an ERISA plan, courts should consider

"the kind of relief that plaintiffs seek, and its relation to the pension plan." *Ramsey v. Formica

Corp.*, 398 F.3d 421, 424 (6th Cir. 2005).

"[I]n interpreting ERISA's preemption clause, a court 'must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005)(hereinafter "*PONI*")(*quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).  ERISA preempts state law claims that "(1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.'" *PONI*, 399 F.3d at 698 (*quoting Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir.1996)).  In determining whether or not state law claims are preempted under ERISA, Courts should look to "the objectives of ERISA to guide its preemption decisions." *PONI* at 698.

In *Aetna Health, Inc. v. Davila*, the United States Supreme Court addressed the wide range of ERISA preemption against state law claims, and both expanded and defined the scope of what a court should look for in considering whether ERISA preempts a particular state law claim. *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004).  In *Briscoe v. Fine*, the Sixth Circuit Court of Appeals adopted the principles of *Davila* and applied its holding in determining whether the state law claims asserted by the plaintiffs against the administrators were preempted. *Briscoe v. Fine*, 444 F.3d 478, 498 (6th Cir. 2006).  In particular, the Court in *Briscoe* noted that "'any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.'" *Briscoe*, 444 F.3d at 498 (*quoting Davila*, 542 U.S. at

7

209).  The Sixth Circuit also noted that suits brought "'only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and [that do] not attempt to remedy any violation of a legal duty independent of ERISA'" would be preempted.  *Id.* (*quoting Davila* at 214).

In *Briscoe*, former employees brought a class action suit against former officers and directors of a corporation, as well as third-party administrators of an employer healthcare ERISA plan, asserting state law claims of fraud, misrepresentation, concealment and duty to disclose the financial condition of the company against the defendants.  *Id.* at 478.  These causes of action resulted from the defendants' changing their employee healthcare plan from a fully insured healthcare plan to a self-insured plan administered by defendant Preferred Health Plan.  *Id*. at 483.  In asserting the state law claims, the plaintiffs' allegations came from:

> (1) the failure of the Fines to notify the plan beneficiaries of the Company's declining financial condition, (2) their failure to notify the beneficiaries of the Company's inability to fund the healthcare plan, (3) the failure of PHP to make the same type of disclosures, and (4) PHP's actions in extracting from the funds on hand its administrative fee and then transferring to the Company both COBRA payments that PHP had received from plan participants and the remaining balance of Company funds in the plan account.

*Id.* at 496-97.  The district court dismissed all of the plaintiffs' state law claims with prejudice, and the plaintiffs appealed to the Sixth Circuit Court of Appeals.  *Id.* at 495.

As to the state law claims, the Court in *Briscoe* affirmed in part and denied in part the ruling by the district court judge.  *Id.* at 496.  As to the claims of misrepresentation, fraud, and concealment, the Court held that these fell under the second category of ERISA preemptions to state law claims as set out by the Court in *PONI*, in that the plaintiffs were attempting to provide an alternate enforcement mechanism to the civil remedy available under ERISA.  *Id.* at 498-99

8

(*citing PONI* at 698).  The Court reasoned that the plaintiffs had failed to show "a legal duty

independent of ERISA" for those particular state law claims because any duty owed by the

defendants to the beneficiary as to those claims arose out of the "existence and nature of the plan

itself, including any duties that the plan imposed on the officers or directors." *Id.* at 499 (*citing*

*Davila* at 214).  The Court held that the plaintiffs had merely restated or "relabeled" their ERISA

claims through their state law claims, and thus their claims were preempted by ERISA. *Id.*

Ultimately, the Court determined these claims were related to the ERISA plan. *Id.* at 499-500.

The Court further analyzed the Plaintiff's allegations that the employer committed the

state law torts of fraud and misrepresentation by failing to disclose the overall financial condition

of the company.  The Court held that the claims were not preempted by ERISA.  On these

claims, the Court stated:

> [u]nlike the other causes of actions discussed above, the plaintiffs could have alleged
> such a breach of duty even if the Company had never sponsored an ERISA-covered
> plan.  In other words, this cause of action asserts a 'violation of a legal duty
> independent of ERISA.'

*Id.* at 500 (*quoting Davila* at 214).

The Court went on to distinguish *Briscoe* from the prior Sixth Circuit Court of Appeals

case of *Marks v. Newcourt Credit Group, Inc.*, where the Court determined that the fraud and

misrepresentation claims asserted by the plaintiff were only partially preempted. *Id.*; *Marks v.*

*Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003).  In *Marks*, a former employee,

whose claim under a severance plan was rejected by plan administrators, filed state law claims

and an ERISA claim against his employer who he alleged had fraudulently induced him into both

accepting changes to the existing insurance plan and working for them in the first place. *Marks*,

342 F.3d at 449-50.  The Court in *Marks* determined that the plaintiff's claims for fraud and

misrepresentation in as far as the employer inducing the plaintiff to *work* for the employer were not preempted, but the claims to the extent that the employer misled the plaintiff in not exercising his rights under the plan were preempted. *Id.* at 453.

The instant matter involves whether or not the Defendants should have pursued an action against an *agent* of the insurance provider, which differs from *PONI*, *Briscoe* and *Marks*, and warrants further analysis. Those matters involved state law claims directed at either the provider or administrator of the plan, not an agent of the provider or administrator. Dr. McMurtry asserts that his suit should have included Botts, the agent in this matter, and not the provider or administrator. The Plaintiff asserts that the claims arose from a duty of Botts independent of any duty related to ERISA. Botts, like any insurance agent, had a duty not to negligently misrepresent the terms of the policy and/or fraudulently induce the Plaintiff to purchase the coverage.

In *Massachusetts Casualty Insurance Company v. Reynolds*, the Sixth Circuit Court of Appeals addressed in dicta whether or not ERISA preempted state law claims relating to an agent's misrepresentations. *Massachusetts Casualty Insurance Company v. Reynolds*, 113 F.3d 1450, 1453-1454 (6th Cir. 1997). The Court in *Reynolds* ultimately held that claims against an *insurer* for misrepresentations made to an insured by one of its agents was preempted by ERISA. *Reynolds*, 113 F.3d at 1454. In so doing this, the Court in *Reynolds* did not follow its prior decision in *Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157, 162 (6th Cir. 1989), which seemingly reached a different conclusion. *Id.* In *Perry*, similar to the instant matter, there was no claim for benefits directly from the plan. As stated in *Reynolds*:

> *Perry* recognized that "the Supreme Court has given ERISA a broad construction
> with respect to its preemptive effect on state law and state actions that 'relate to' an

10

employment benefit Plan." [*Perry*] at 160. *Perry* did hold, to be sure, that state law claims for recission of an ERISA plan and for restitution based on fraud and misrepresentation occurring before the ERISA plan existed were not preempted, the claims not being for "plan benefits or an increase in plan benefits." *Id.* at 162. The case also implied, however, that a plaintiff's state law claims for benefits under an ERISA plan are preempted by ERISA even though based on wrongful conduct occurring prior to the existence of the ERISA plan. *Id.* at 161-62. Mr. Reynolds' specific performance claim against Massachusetts Casualty is a claim for "benefits under the plan," and is, therefore, preempted.

*Id.* at 1454.  However, in dicta, the Court in *Reynolds* went on to note that its opinion was "consistent" with the Fifth Circuit Court of Appeals holding in *Perkins v. Times Ins. Co.*, where the Fifth Circuit Court of Appeals determined that ERISA *did not* preempt a state law claim against the independent *agent* of an insurance provider in that matter, for fraudulently inducing the plaintiff to adopt the plan. *Reynolds* at 1454; *Perkins v. Times Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990).  However, despite this holding, *Perkins* requires further scrutiny.

In *Perkins*, the plaintiff was solicited to an ERISA plan by an *independent* agent who did not work for either the provider or plan administrator. *Perkins* at 472. (emphasis added).  Though the Courts in both *Reynolds* and *Perkins* do not address this issue, the Eleventh Circuit Court of Appeals in *Morstein v. National Ins. Services, Inc.,* which cites *Perkins* in support of its holding, discusses this distinction. *Morstein v. National Ins. Services, Inc.*, 93 F.3d 715, 722-23 (11th Cir. 1996).  The Court in *Morstein* noted that the insurance agent in that matter was not an ERISA entity as he was independent from the employer, administrator or provider, and therefore, "had no control over the payment of benefits or a determination of [the insured's] rights under the plan." *Morstein*, 93 F.3d at 723.  In dicta, the Court in *Morstein* went on to note that:

> [a]llowing preemption of a fraud claim against an individual insurance agent will not serve Congress's purpose for ERISA. As we have discussed, Congress enacted ERISA to protect the interests of employees and other beneficiaries of employee benefit plans. To immunize insurance agents from personal liability for fraudulent

11

misrepresentation regarding ERISA plans would not promote this objective.

*Id.* The Court in *Morstein* ultimately held that the state laws claim against the agent for *fraudulent inducement* and negligently processing her ERISA application were not preempted by ERISA. *Id.* at 724. In reaching its determination, the Court held the fact that the insurance agent was not an ERISA entity and that the remedy sought by the plaintiff beneficiary would only indirectly affect a relation between the beneficiary and the ERISA plan did not warrant ERISA preemption. *Id.* at 723. The Court further reasoned that the agent in that matter had to abide by state law in the course of his profession, and that claims for fraudulent misrepresentation were governed by state law, not ERISA. *Id.*

In 2003, the Fifth Circuit Court of Appeals, in *Hobson v. Robinson*, revisited its decision in *Perkins*, and specifically addressed whether or not it mattered for ERISA preemption purposes if an insurance agent was independent of the provider or administrator. *Hobson v. Robinson*, 75 Fed. Appx. 949, 953-954 (5th Cir. 2003). In *Hobson*, the Court stressed that:

> the agent's status as an independent agent was not the dispositive factor in the analysis. Rather, the critical determination was whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated. Thus, the timing of plan formation is not the crucial factor in ERISA preemption. *Rather, the extent the claim itself relates to an ERISA plan guides our determination.*

*Hobson*, 75 Fed. Appx. at 954. (emphasis added). However, the Court in *Hobson* went on to note that "the fact that the agent in Perkins was an independent agent and not an employee of Time [, the ERISA entity,] simply bolsters the point that the duty imposed upon the relationship between Perkins and the agent did not derive from ERISA." *Id.* at 954. As such, these cases that permit state law claims against an agent to go forward do not provide a clear-cut definition that

12

claims will or will not be preempted by ERISA if the beneficiary sues the agent under state law, and whether or not an agent works for the provider or administrator and/or works independently.[1]  Ultimately, though a court may take these factors into consideration, as analyzed *supra*, a court must look at that particular claim and determine whether or not it relates to an ERISA plan.[2]

In the instant matter, the Court has already determined that Botts was within the scope of his employment for Paul Revere when the transaction took place between Botts and Dr. McMurtry, indicating that Botts was directly employed by the provider and was not working as an independent agent.[3]  As noted *supra*, this fact is not dispositive; however, it does not "bolster" the argument that the relationship between Botts' and Dr. McMurtry was not tied to ERISA. Accordingly, in order "[t]o determine whether respondents' causes of action fall 'within the scope' of ERISA § 502(a)(1)(B), we must examine respondents' complaints." *Davila*, 542 U.S. at 211.

In Dr. McMurtry's complaint, the Plaintiff alleges that Botts represented to him seven (7) factors that induced the Plaintiff to sign onto the plan, including: 1) that the Plaintiff would be protected in his specialty for life; 2) that the Plaintiff could decide whether he wanted to work in

---

[1]These cases were decided before the United States Supreme Court opinion in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004).

[2]*See Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812 (9th Cir. 1992)(holding that a negligence claim against an insurance agent in procuring conversion policy for employee who terminated employment was based on duties created by the group plan and thus was preempted by ERISA); *see also Wilson v. Zoellner*, 114 F.3d 713 (8th Cir. 1997)(holding that a state law claim for negligent misrepresentation against an agent did not relate to, refer and have a connection with the ERISA plan, and therefore, was not preempted by ERISA).

[3]In its January 17, 2006 Memorandum Opinion, the Court, on page 8, held "[a]t the time the insurance policy was signed by the Plaintiff in 1985, Botts was a statutory W-2 employee of Paul Revere.  Botts was housed in a Paul Revere office.  The forms on which the policy was signed were Paul Revere forms... Botts was well within the scope of his employment when he had Dr. McMurtry sign the insurance policy in 1985."

another specialty after being disabled in emergency medicine; 3) that Paul Revere would never ask Dr. McMurtry whether he was able to work at another occupation while disabled; 4) that Paul Revere would not reduce his disability benefits if he worked at another occupation while disabled; 5) that the definition of total disability under the terms of the Policy was "the inability to perform the important duties of an emergency physician;" 6) that the Plaintiff would receive full disability benefits even if he could not perform the duties of his own specialty, but worked full time in another medical specialty; and 7) that Paul Revere was "uniquely qualified" to provide disability income protection. (Complaint, ¶14). From the complaint and other factors mentioned *supra*, it appears that Dr. McMurtry's state law claims against Botts for fraud and negligent misrepresentation would not have been related to the ERISA plan in this matter.

On the surface, the cases that appear most on point to the instant matter, as noted in dicta by the Sixth Circuit in *Reynolds*, are the Fifth Circuit Court of Appeals case of *Perkins v. Time Insurance Company*, as well as the later Fifth Circuit case, *Hobson v. Robinson*.[4]  In *Perkins*, the agent, though independent of the provider, made false representations to the plaintiff beneficiary, in which:

> Davis[, the agent,] assured him[, the beneficiary,] in the presence of other MPT employees that his daughter's condition would be covered under the Time [,the provider,] policy because it would be considered a congenital defect rather than an excluded preexisting condition. On the basis of these representations Perkins claims that he terminated his existing insurance coverage, which had provided protection for his daughter's condition, and elected to participate in the Time policy, which MPT then adopted as its employee welfare benefits plan.

*Perkins* at 472.  In *Hobson*, similar to the instant matter, an agent employed by the provider

---

[4]As mentioned *supra*, the Sixth Circuit Court of Appeals, in *Reynolds*, referenced *Perkins* in dicta, noting that its opinion in *Reynolds* was consistent with *Perkins*. *Reynolds* at 1454.  Subsequent to the dicta in *Reynolds*, the Fifth Circuit Court of Appeals, in *Hobson*, reexamined *Perkins*.

allegedly made false representations to the plaintiff beneficiary in order to induce him into purchasing the ERISA plan. *Hobson*, 75 Fed. Appx. at 950-51.[5]  In both cases, the Court ultimately held that the state law claims for fraud were not preempted by ERISA.  As stated by the Court in *Hobson*,

> [o]ur decisions since *Perkins* have reaffirmed that the important factor in ERISA preemption is the relationship between the parties involved in the claim itself and whether that claim is intricately bound with an ERISA plan...[t]he critical factor was that the fraudulent inducement claim did   not require interpretation and administration of the ERISA policy...[here], Hobson's claims for fraud and misrepresentation do not require interpretation or administration of the ERISA plan...Hobson's claims are based upon benefits given up for purposes of ERISA and thus are not preempted by ERISA...Joe Chrestman, like the agent in *Perkins*...allegedly fraudulently induced Hobson to surrender his pre-existing insurance coverage in order to obtain an ERISA plan. Joe Chrestman's underlying conduct relates only indirectly to the ERISA plan. As such, the relationship between Hobson and Joe Chrestman derives from state common-law claims, not the ERISA plan. Moreover, this conclusion does not contradict Congress's intent in enacting ERISA-the simplification of plan interpretation and administration-because Hobson's claims do not require either plan interpretation or administration.

*Hobson* at 955-56.

Here, similar to *Perkins* and *Hobson*, it appears that the claims that Dr. McMurtry allege should have been asserted against Botts for fraud and negligent misrepresentation did not arise directly from the plan, but rather from Botts' inducement to have the Plaintiff join the plan.  The legal duty not to misrepresent the plan did not arise from the plan itself, but from an independent source of law; state tort law within Tennessee.  If the Defendants had asserted these claims against Botts in the underlying litigation, arguably, the claims would not effect the structure, administration or type of benefits provided under the ERISA plan because the claims do not deal

---

[5]As stated in *Hobson*, "Joe Chrestman [, the agent,] advised Hobson[, the beneficiary,] that he could provide comparable health insurance coverage for Master Finishes at rates much lower than Master Finishes's current insurance plan with Blue Cross/Blue Shield. Joe Chrestman represented to Hobson that he was selling health insurance and never informed him that he was offering a self-funded ERISA plan that had little or no assets."

with recovery from the plan and/or application of the plan, but instead concern the inducement to join the plan in the first place.  Further, the fraud and negligent misrepresentation claims that arguably should have been brought against Botts would not affect any of the terms of the plan, and therefore, Dr. McMurtry would arguably have a right to recover under those state law claims.

In contrast to *Briscoe*, the case cited by the Defendants in their reply, where the Court held that the duties to disclose the financial condition of the plan arose not from tort law, but out of the nature of the plan itself, especially because of the fact that the plan imposed such duties on officers and directors, such a duty was not required of Botts under the ERISA plan. *Briscoe* at 499.  Further, in *Briscoe*, the Defendants were not attempting to induce the plaintiff beneficiary to join the plan; rather, they allegedly failed to disclose the financial condition of the plan to the plaintiff after they had already signed on. *Id.*  This understanding of ERISA preemption in this particular context is consistent with the dicta in the Sixth Circuit Court of Appeals opinion in *Reynolds*, which noted in approval the holding of the Fifth Circuit Court of Appeals opinion in *Perkins*; and *Marks*, where the Court expressed the difference between the plaintiff beneficiary being fraudulently induced to work for the defendants in the first place compared to being induced not to act upon the plan and/or accept changes to the ERISA plan once the plaintiff beneficiary had already joined the ERISA plan. *Reynolds*, 113 F.3d at 1454; *Marks*, 342 F.3d at 449-50, 453.

The complexity of this matter merits further analysis, especially since the Sixth Circuit has not directly addressed this particular issue.  In looking at how other circuits have analyzed similar matters, the United States District Court for the District of Massachusetts decision in

*Miara v. First Allmerica Financial Life Insurance Co.*, provides some guidance. *Miara v. First Allmerica Financial Life Insurance Co.*, 379 F. Supp. 2d 20 (D. Mass. 2005).  The Court in *Miara* not only dealt with a similar issue, but also undertook an exhaustive attempt to summarize how all of the circuits had dealt with this matter by looking at the pertinent cases from those jurisdictions. *Miara* at 33-50.

In *Miara*, the plan beneficiary brought state law claims against the insurance agency and agents who sold the beneficiary an ERISA plan, which included a claim for negligent misrepresentation. *Id.* at 24.[6]  In making its decision as to whether or not ERISA preempted the state law claims asserted by the plaintiff, the Court focused on three general considerations in order to determine whether or not the state law claims "relate to" the ERISA plan. *Id.* at 56-59. First, the Court considered whether the Court needed to consult the plan to determine damages; Second, the Court looked at the relationships between the ERISA entities and non-entities; and Third, the Court looked at the timing of the alleged misrepresentations. *Id.* at 57-58.

In looking at the first consideration as applied to the facts of that case, the Court emphasized that the plaintiff was not challenging the plan itself, nor the administration of the plan, but instead challenged "the procurement of the plan." *Id.* (*citing Giannetti v. Mahoney*, 218 F.Supp.2d 8, 12 (D.Mass.2002) (noting that procurement of the plan is different than administration and/or interpretation of the plan, because procurement deals with the promise to induce, not the plan itself).  In addition, the Court stated that the plaintiff sought damages "proximately caused" by the Defendants' sale of the plan through the alleged misrepresentation, and not the recovery of benefits from the plan. *Id.*  The Court also noted that the claims against

---

[6]The Defendants in *Miara* included: First Allmerica Financial Life Insurance Company, and its agent Joseph Bonasera; and Baker Associates Insurance Agency, and its agent Gary Baker.

the Defendants arose from their individual liability under state law, and not through any liability or duty found within the ERISA plan. *Id.* Ultimately, the Court determined that the misrepresentations of the plan as to the promised benefits would only relate indirectly to the plan because if such a reference needed to be made to calculate damages, it would be "remote and incidental." *Id.* at 58 (*citing Morstein*, 93 F.3d at 723-724.).

In regards to the second consideration, the Court noted that the Defendants were not the employers of the plaintiff, nor were they the plan administrator of the ERISA plan that the plaintiff was under. *Id.* The Court went on to hold that "[t]o hold that insurers may never be sued in connection with ERISA plans for misrepresentations made would grant de facto immunity to all insurers, or to any entity or anyone, in any way, shape or form involved with a plan, all at the expense of the employee." *Id*. (*citing Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1286 (6th Cir. 1991) (Jones, J. dissenting)).

In looking at third and final consideration, the Court concurred with the determination in *Hobson*, that the timing of the plan is not a "crucial factor" in ERISA preemption, and noted that a Court must instead look to the relationship of the parties governed by the ERISA plan to determine if the claim relates to ERISA. *Id.* at 58-59 (*citing Hobson* at 954).

In applying these considerations to the state law claims, the Court ultimately determined that the ERISA plan did not preempt the claim against the defendants for negligent misrepresentation. *Id.* at 60. The Court, held that the claim for negligent misrepresentation against the defendants could go forward because the plaintiff: did not seek ERISA benefits; did not seek to negate an ERISA provision; and did not assert rights under ERISA. *Id.* Further, the

18

Court noted that the Defendants were not ERISA entities.[7] *Id.* The Court concluded by noting that "[a]ny money damages awarded would not affect an ERISA plan but would be the responsibility of the defendants," and that the claims were traditional state law claims that Congress did not intend to preempt through ERISA. *Id.*

In applying *Miara* to the instant matter, the analysis by that Court relates somewhat to the case at hand.  In looking at the facts, each case involves a state law claim for negligent misrepresentation that has been brought by the beneficiary against an insurance agent involving the procurement of the beneficiary to join the plan, with the plaintiff alleging that the agent fraudulently induced the plaintiff to join the plan by allegedly stating that the plan covered certain benefits that it did not cover in the end.  Here, in examining the first consideration, as to whether or not the Court would need to consult the plan to determine damages, as in *Miara*, Dr. McMurtry claims that the Defendants should have sued Botts individually for the procurement of the plan.  The Plaintiff asserts that he would not have been trying to recover benefits from the plan, but instead would have sought to recover damages for the fraudulent misrepresentations made to him by Botts, which caused him a lost opportunity to find another plan where he would have recovered for his ailments as he believed he would have when he signed on with Botts.  The Court agrees with the reasoning used by the Court in *Miara*, in that based on the nature of the state law claims, any reference to the plan used to calculate damages in the instant matter would be "remote and incidental."*Id.*  Referring to the plan to calculate damages would not have

---

[7]The Court here referenced the holding of the Fourth Circuit Court of Appeals opinion in *Coyne & Delany Co. v. Selman*, where the Court stated "Congress did not intend to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries and the beneficiaries." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1469 (4th Cir. 1996).

affected the administration of the plan and would not have lead to the Plaintiff recovering directly under the plan.  As an aside, the Court notes that *Miara* allows certain state law claims to proceed that the Court believes were preempted.  However, the claims of fraud and negligent misrepresentation on the procurement of the ERISA plan appear to be permissible state law claims.

In *Lion's Volunteer Blind Ind., Inc. v. Automated Group Admin., Inc.*, the Sixth Circuit Court of Appeals determined that a claim which required a court to calculate benefits that would have been owed to a beneficiary under an ERISA plan is preempted by ERISA.  *Lion's Volunteer Blind Ind., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 809 (6th Cir. 1999)(hereinafter "*Lion's*").  However, *Lion's* can be distinguished from the instant matter.  First, *Lion's* involved a suit by a beneficiary against an administrator of an ERISA plan, an ERISA entity, under a state law claim for misrepresentation. *Lion's* at 805.  The Court stated that the plaintiff brought the suit against the administrator "alleging several grounds for recovery of Barnett's medical expenses" under the plan. *Id.* at 805-6.  In fact, the Court noted the significance of the fact that the district court in *Lion's* began its opinion with the words "'This is an ERISA action to determine which party, if any, is liable for the medical expenses of Warren Barnett, [the beneficiary].'"  Further, the plaintiff beneficiary in *Lion's* did not seek to recover damages by specifically alleging fraudulent inducement or misrepresentation as to the procurement to join the plan to begin with, but instead sought recovery of his medical expenses.

In contrast to *Lion's*, the Plaintiff in the instant matter, Dr. McMurtry, would not have been seeking to recover under the plan, but instead would have sought to recover damages based on the misrepresentations made to him by Botts.  Further, in looking at the calculation of

damages, the Sixth Circuit Court of Appeals, in *Marks*, addressed the scope of *Lion's* in regards to whether any state law claim that would involve a court referring to a plan to figure out damages would be preempted by ERISA. *Marks*, 342 F.3d at 453.  In *Marks*, the Court stated that:

> Because [the beneficiary] seeks damages equaling the benefits he would have received under the plan, it seems at first glance that his claims relate to an ERISA benefit plan. However, a close reading of Marks's complaint reveals that the reference to plan benefits was only a way to articulate 'specific, ascertainable damages.' *Wright* [*v*. General Motors Corp. 262 F.3d 610,] 615 [6th Cir. 2001]...[w]e conclude that the district court erred in finding that Marks's state-law claims were preempted to the extent that the claims alleged would have a 'tenuous, remote or peripheral' effect on the plan. *Cromwell*, 944 F.2d at 1276. Marks alleges that, without cause, Newcourt significantly altered his duties and reduced his compensation. Because this conduct may constitute a breach of Marks's employment contract irrespective of the plan, the breach of contract claim is not preempted.

*Marks* at 453.

Lastly, the defendant in *Lion's* was clearly an ERISA entity who controlled and administered the plan directly.  Likewise, the duty allegedly breached came from ERISA, and was not an independent duty.  However, in the instant matter, Botts, an agent of an ERISA entity, was not involved with the administration of the plan.  As stated by the Defendants in their motion for summary judgment:

> Botts would not have been a proper defendant in an ERISA case because Botts did not control the administration of the Paul Revere policy...[t]he proper party-defendants in a case in which a plaintiff makes a claim for benefits under an ERISA-governed policy are the entities and/or individuals who actually make the decision to grant or deny the claim...Paul Revere was the appropriate defendant in the Benefits Litigation because it controlled the administration of the Policy and made all decisions concerning the granting or denying of the benefits at issue...[i]t is **undisputed** that Paul Revere - not Botts - made the decision to reclassify Plaintiff from Totally Disabled to Residually Disabled, and it was this decision that ultimately affected the amount and duration of the benefits that Plaintiff would receive from Paul Revere...Botts was not a proper party defendant in the Benefits Litigation because it is undisputed that he, individually, did not control the administration of

21

> the Policy...[i]t is undisputed that he was salesman; he did not administer the claim
> and had no authority to adjudicate claims for Paul Revere. (emphasis in original).

Docket #89, at 17-19.  This explanation, as offered by the Defendants in the instant matter, not only distinguishes this matter from *Lion's*, where the defendant in *Lion's* was an ERISA entity who administered the plan, but also is analogous to the second consideration conducted by the Court in *Miara*.

As analyzed *supra*, the second consideration involved whether the defendants in an ERISA preemption action were ERISA entities and/or had a fiduciary relationship.  Here, similar to *Miara*, Botts was not the employer of the Plaintiff, nor was he a plan administrator.  Additionally, no fiduciary duties relating to the ERISA plan existed between Botts and Dr. McMurtry.  Though the Court does not adopt the broad language used by the Court in *Miara* that refers to the dissenting opinion in *Cromwell*, the Court nonetheless notes that these factors tend to show that a claim against Botts individually for fraud and negligent misrepresentation would not have been related to ERISA.

As to the third consideration, dealing with the timing of the alleged misrepresentation, the Court concurs with the Court in *Hobson*, which notes that the timing of the claim is not a crucial factor. *Hobson* at 954.  As such, the Court will not take into serious consideration the fact that the alleged inducement to join the plan took place before the Plaintiff actually was a plan member.

In comparing the overall analysis in *Miara* to the instant matter, on its face, the Court finds that if it would incorporate this method of examination to determine whether or not ERISA preempts the state law claims, the Court would likely hold that ERISA would not have preempted the claims against Botts individually.  However, the extent of this analysis on these

22

issues does not end here.  Aside from the fact that *Miara* is a district court decision outside of the

Sixth Circuit, the Court must, as the Court did in *Miara*, look at what other jurisdictions have

determined under similar circumstances, as well as determine how these holdings fit within the

precedent established by the Sixth Circuit Court of Appeals.

      In looking at the decisions in the Eighth Circuit Court of Appeals, there are two cases

that mandate scrutiny.  As pointed out by the Defendants, in the Sixth Circuit Court of Appeals

case of *Perry v. P\*I\*E Nationwide, Inc.*, the Sixth Circuit adopted the reasoning used by the

Eighth Circuit Court of Appeals in *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208 (8th

Cir.), *cert. denied*, 454 U.S. 968 (1981);  *Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157, 162

(6th Cir. 1989).  In *Dependahl*, the case involved corporate executives who brought state law

claims against the corporation and its new controlling shareholder alleging ERISA violations as

well as state law claims of fraud and tortious interference with contractual relationships.

*Dependahl* at 1211-12.  In addressing the state law claims, the Court found that ERISA provided

a remedy against the corporation in that matter under the ERISA statute, and therefore,

determined that ERISA preempted the state law claims. *Id.* at 1215-16; *Perry*, 872 F.2d at 162.

      In contrast to the instant matter, *Dependahl* did not involve inducement to join a plan, nor

did it involve a claim against the agent of the administrator, but dealt with a claim directly

against the administrator. *Id.* at 1211-12.  Further, in contrast to the instant matter that deals with

inducement to join the plan, *Dependahl* involved a claim dealing with the contractual

relationship of the plan, which concerned how the administrator managed the plan. *Id.* at 1210-

12.  As such, *Dependahl* is not on point in regards to the instant matter, which deals with state

law claims of fraud and negligent misrepresentation against the agent of an administrator,

individually, for allegedly fraudulently inducing and/or procuring a potential beneficiary to join an ERISA plan.

     *Dependahl* was decided in 1981, sixteen (16) years before the Eighth Circuit Court of Appeals decided the case of *Wilson v. Zoellner*, 114 F.3d 713 (1997).  In *Wilson*, the plaintiff beneficiary initially brought an ERISA claim against the administrator of her ERISA plan, Prudential, after Prudential denied benefits to her under the policy. *Wilson*, 114 F.3d at 715.  In the Plaintiff's complaint against Prudential, the Court found that Prudential had correctly interpreted the policy, and subsequently dismissed her complaint. *Id.*  Wilson then brought a claim against the agent from Prudential who sold her the policy, asserting that the agent had negligently misrepresented the scope of the coverage. *Id.*  The United States Court for the Eastern District of Missouri dismissed the claim, holding that the state law negligent misrepresentation claim was preempted by ERISA. *Id.*  On review, the Eighth Circuit held that ERISA did not preempt the negligent misrepresentation claim against the agent in his individual capacity. *Id.* at 722.

     In reaching its holding, the Court initially concluded that the negligent misrepresentation claim did not contain a reference to the ERISA plan because it did not actually or implicitly refer to the plan. *Id.* at 717.  After reaching this primary determination, the Court went on to analyze whether the state law affected and/or was connected to the ERISA plan. *Id.*  The Court considered seven (7) factors in making this decision, including:

> [1] whether the state law negates an ERISA plan provision, [2] whether the state law affects relations between primary ERISA entities, [3] whether the state law impacts the structure of ERISA plans, [4] whether the state law impacts the administration of ERISA plans, [5] whether the state law has an economic impact on ERISA plans, [6] whether preemption of the state law is consistent with other ERISA provisions, and [7] whether the state law is an exercise of traditional state power.

*Id.* (*citing Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital, Inc.*, 947 F.2d 1341, 1344-45 (8th Cir. 1991)).

In applying these factors to the facts of that case, the Court determined there was no connection between the negligent misrepresentation claim and the ERISA plan.  In examining the first factor, the Court held that the claim did not negate the ERISA plan because the policy did not contain a provision which dealt with tortious acts committed by insurance agents when selling the plans to beneficiaries. *Id.* at 718.  In looking at the effect on relations between the primary ERISA entities and the impact on the structure on the ERISA plan, factors [2] and [3], the Court held that the claim did not affect the primary ERISA entities (employer, the plan, the fiduciaries, and beneficiaries) because the Court found that the beneficiary and her former employer would not be affected by the suit. *Id.*  In addition, the Court found that if Prudential, the plan administrator, incurs any liability as a result of the suit, it would do so as an employer only under state tort law, and not as plan fiduciary because it would not be held liable for its administration of the plan, but for the conduct of its agent. *Id.*  The Court went on to clarify that the administrator "does not face any liability incurred by its role as an ERISA entity, [and] its relationship with other ERISA entities cannot be affected by [the beneficiary's] suit." *Id.* (*citing In Home Health, Inc. v. Prudential Ins. Co. of America*, 101 F.3d 600, 606 (8th Cir. 1996)).

In reviewing the impact on the administration of the ERISA plan, factor [4], the Court held that the suit would not impact the administration of the plan because the Court did not see how allowing a beneficiary to recover for negligent conduct that induced the beneficiary to join the plan could prevent the administrator from serving in its capacity and/or impose new duties on plan administrators. *Id.* at 719.  In looking at the factor [5], the Court found that the state law

25

claim would have no direct economic impact on the ERISA plan because the claim was not for the recovery of the beneficiary's medical expenses, as the plaintiff did not seek plan benefits, but instead sought to recover against the agent individually. *Id.* The Court went on to note that the possibility that costs associated with the marketing and selling of ERISA plans in general, could be influenced by such a claim, did not directly relate to the ERISA plan in question. *Id.* With regards to factor [6], as to whether or not the preemption of the suit is supported by ERISA provisions, the Court found no specific ERISA provision that addressed this matter. *Id.*

Lastly, under factor [7], the Court determined that a state law claim for negligent misrepresentation is "an exercise of traditional state power." *Id.* Aside from noting that Missouri recognized a claim for negligent misrepresentation, the Court explained that because ERISA preempts many state law claims that could arise from the administration and interpretation of the plan itself, claims that fall outside the scope of ERISA (in that the ERISA statute and/or a higher court have not explicitly held that the claims have been superseded by ERISA), should not be preempted. *Id.* at 720. Accordingly, based on this analysis the Court held the claim for negligent misrepresentation did not have a sufficient connection with the ERISA plan. *Id.*

In applying the seven (7) factor test in *Wilson* to the instant matter, and assuming that the Tennessee state law claims for fraud and negligent misrepresentation do not refer to the ERISA plan involved in this matter, it appears that ERISA would not preempt the state law claims. In looking at factor [1], similar to *Wilson*, the Paul Revere plan involved in this matter would not have been negated if the claims went forward because claims deals with state law liability concerning the inducement to join the plan, and not the administration of the plan.

Factors [2] and [3] also would have favored not preempting the claims. In contrast to

26

*Wilson*, Dr. McMurtry entered his plan individually and not through his employer; thus, no relations between the beneficiary and employer would be affected.  Further, as mentioned *supra*, Botts and Dr. McMurtry did not have a fiduciary relationship that arose out of the plan, and, as submitted by the Defendants, Botts only sold the plan and did not administer, control and make any decisions regarding the plan.  Additionally, similar to *Wilson*, any liability that Paul Revere would have incurred arose out of an employer-employee relationship governed by state law, and not as a plan fiduciary, assuming the negligent misrepresentation would not have been preempted by ERISA.  And, if the fraud claim was not preempted, because it is an intentional tort that falls outside of the scope of Botts' employment with Paul Revere, the ERISA plan would not incur any liability if Botts was found liable for fraud.  Regardless, under both claims, Paul Revere would not have been liable for its administration and/or control of the plan, and any liabilities would not have come through its obligations as an administrator of an ERISA plan, but instead would have derived from a state law claim of an employer responsible for the actions of its employee acting within the scope of his employment to fraudulently induce and/or procure the Plaintiff to join the Paul Revere plan.

In looking at Factor [4], the impact of allowing the state law claims to go forward would not affect the administration of the plan because the Plaintiff sought to recover for his inducement to join the plan, not any decisions made by the administrator once he was a part of the ERISA plan.  As such, the state law claims would not have imposed any new obligations on Paul Revere, nor in any way would have prevented Paul Revere from carrying out its duties.  Similar to *Wilson*, under factor [5], the claims would not have had a direct economic impact on the plan in this matter because Dr. McMurtry did not seek to recover benefits under the plan

27

through the state law claims, nor was he seeking to recover any other medical expenses he claimed he would be entitled to.  Rather, Dr. McMurtry would have sought payment from Botts individually, and any award against Botts would not directly affect the plan.  The Court also concurs with the reasoning in *Wilson* in regards to factor [6], in that no specific ERISA provision directly preempts the state law claims, and the state law claims do not act directly in contrarst to anything within the ERISA statute.  Lastly, under factor [7], Tennessee also recognizes a claim for negligent misrepresentation as well as fraud, and for the same reasons articulated by the Court in *Wilson*, Tennessee would have an interest in regulating this traditional area of state law that involves the alleged fraudulent inducement and/or procurement to join an insurance plan.  Accordingly, if the Court were to incorporate the reasoning and factor analysis of *Wilson*, arguably, the state law claims would not be preempted by ERISA.

At this juncture, in looking at the case before the Court, it seems as if the case law from other jurisdictions would suggest that the state law claims for fraud and negligent misrepresentation would not be preempted by ERISA.  However, although the Sixth Circuit has not addressed a case on point similar to the instant matter, nor has it provided a factor analysis as in depth as the Court in *Wilson*, this Court must still abide by its precedent when reaching its conclusions.  Thus the holdings in *Perkins, Hobson, Morrison, Miara* and *Wilson*, though guiding, must also find merit within this circuit.

To begin, the Sixth Circuit Court of Appeals opinion in *Firestone Tire & Rubber Co. v. Neusser* offers a three (3) factor test to determine whether a state law action relates to an ERISA plan. *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir. 1987).  In *Neusser*, the Court stated that first, a court must ascertain whether the state law represents a traditional

exercise of state authority; second, the Court must determine whether a state law affects relations among the principal ERISA entities; and third, the Court must determine whether the state law claim effects the ERISA plan. *Neusser*, 810 F.2d at 555-56.  In comparison to *Wilson*, these factors are similar to factors [2] & [3] (combined), [5] and [6] used by the Eighth Circuit in that matter. *Wilson* at 717.

In *Neusser*, the Court held that the first factor required a court to examine whether Congress intended ERISA to preempt areas of "'traditional state regulation.'" *Neusser* at 555 (*quoting Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724 (1985)).  In looking at the second factor, the Court stated that "courts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities-the employer, the plan, the plan fiduciaries, and the beneficiaries - than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan." *Id.* at 556.  In regards to the third factor, the Court looked at the financial impact on the plan if the claim was allowed to go forward to see if the plan would be directly or incidentally affected by the state law claim. *Id.*

Two years after *Neusser*, in *Perry*, the Sixth Circuit Court of Appeals reviewed whether employees' state law claims of fraud and misrepresentation would be preempted by ERISA. *Perry* involved employee beneficiaries of the plan who brought state law claims against the administrator alleging fraudulent inducement in having the employees join the plan in the first place. *Perry*, 872 F.2d at 158-59.  Though the Court determined that those claims were not preempted by ERISA, the language the Court used in reaching this finding was not definitive. *Id.* at 162.  Specifically, the Court stated:

> [g]iving plaintiffs the benefit of some doubt in this respect, we are uncertain whether 29 U.S.C. § 1132 provides, under the circumstances of this case, an adequate remedy to redress the wrongs claimed, specifically, rescission and refund of wage reductions. We therefore AFFIRM the action of the district court in concluding there was no ERISA preemption but only with respect to the fraud, misrepresentation, and promissory estoppel claims.

*Id.*

This language was called into doubt and was not extended by the Court in two subsequent Sixth Circuit cases. First, in *Reynolds*, the Court determined that *Perry* did not "compel acceptance" of state law claims to escape ERISA preemption because the claims took place before the plan began. *Reynolds*, 113 F.3d at 1454. *Reynolds* concerned an insured beneficiary who brought state law claims against the insurer administrator of the ERISA plan for breach of contract and fraud, seeking benefits that were denied to him. *Id.* at 1452-53. The Court in *Reynolds* denied the state law claims; however, in that case, as mentioned *supra*, *Reynolds* referred to the Fifth Circuit Court of Appeals holding of *Perkins* in dicta, noting that the opinion was consistent with *Perkins*. *Id.* at 1454.

Despite the holding in *Reynolds*, the facts in that matter differ from the instant case. First, *Reynolds* involved a state law claim between a beneficiary and an ERISA entity who was the insurer administrator of the plan. Here, the state law claims would have involved a suit between a beneficiary and an agent of the insurer who merely sold the plan, and, as stated by the Defendants, had no obligations under the plan nor any authority to administer, interpret or control the plan. Second, the plaintiff in *Reynolds* sought recovery of plan benefits from the insurer, while Dr. McMurtry would have sought damages not from the plan, but instead from Botts individually.

The second Sixth Circuit case that declined to extend *Perry* was *Lion's*. *Lion's*, 195 F.3d

30

at 806-07.  In *Lion's*, the Court noted that the dispositive issue in *Perry* was not the timing of the claim, but rather the type of relief sought. *Id.* at 806.  Ultimately, the Court in *Lion's* held that *Perry* did not stand for the proposition that claims that arose before the plan took place were not subject to ERISA preemption, and instead noted that:

> *Perry* does not necessarily preclude courts in other ERISA-related contexts from taking into account the timing of the alleged wrong when determining whether it is related to an ERISA plan, *Perry's* focus is not on chronology but rather on ERISA's ability to provide the remedy that the plaintiffs seek.

*Id.* at 808.  In reaching this determination, *Lion's* did not adopt *Perkins* because it felt that *Perkins* emphasized the timing of the claim, rather than the relief sought. *Id.*  However, as noted in *Hobson*, *Perkins* did not stand for a party escaping preemption simply because the claim took place before the start of the plan, holding that:

> the timing of plan formation is not the crucial factor in ERISA preemption. Rather, the extent the claim itself relates to an ERISA plan guides our determination.

*Hobson*, 75 Fed. Appx. at 954.  Thus, this Court agrees with the holdings in both *Reynolds* and *Lion's* in that a court should focus on the relief sought by the state law claim, and should not focus on when the claim took place.

Most recently, in both *PONI* and *Briscoe*, as mentioned *supra*, the Sixth Circuit applied the test used by the Fourth Circuit Court of Appeals in *Coyne & Delany Co. v. Selman*, focusing on the second factor, which prohibits state law claims if they provide 'alternate enforcement mechanisms' to the ERISA civil remedy. *Coyne & Delany Co. v. Selman* 98 F.3d at 1468; *PONI*, 399 F.3d at 698; *Briscoe*,  444 F.3d at 497.  In order to not to be preempted by ERISA under this factor, a plaintiff must have a claim that arises from "a legal duty independent of ERISA." *Davila*, 542 U.S. at 214.  In the instant matter, the Court believes that the state law claims for

31

fraud and negligent misrepresentation by Dr. McMurtry against Botts individually would have arisen from a legal duty independent of ERISA.

In applying the test established by the Court in *Neusser*, the three (3) factors favor permitting the state law claims to go forward.  As analyzed *supra*, using the *Wilson* factors in reviewing the first factor of the *Neusser* test, the state law claims of fraud and negligent misrepresentation are traditional areas of state law, where the state of Tennessee recognizes these claims, and ERISA does not specifically reference them within its statute.  In looking at the second factor, the state law claims in this matter only affect the relations of one ERISA entity, Dr. McMurtry, the beneficiary, while the administrator of the plan and other primary ERISA entities have no direct relation to the claims because the claims are against an agent of the insurer in his individual capacity, and not directed at the plan itself.  Thus, the state law claims would only have an incidental effect on the plan.

Finally, under the third factor, the ERISA plan would not be directly impacted by the state law claims, as Dr. McMurtry not only would not have sought benefits from the plan, but he would also not recover directly from the plan, as he would have sought to recover from Botts individually, not from Paul Revere.  As analyzed *supra*, after that determination, if Botts sought to recover from Paul Revere for acting within the scope of his employment for the negligent misrepresentation claim, that recovery would be governed by state agency law addressing an employer-employee relationship, and not the ERISA plan.  Additionally, any subsequent recovery by Botts against Paul Revere would not only have been only indirectly related to the state law claim of negligent misrepresentation, but the recovery would also have come from Paul Revere as an individual employer, and not from the ERISA plan or its duties as administrator of

the ERISA plan.

While this opinion has already distinguished *Reynolds*, *Lion's* and *Briscoe* from the instant matter, the Court still must follow their guidance in making its determination.  Thus in looking at the type of relief sought by the state law claims as emphasized in both *Reynolds* and *Lion's*, and applied as a test in *Briscoe*, this Court finds that the state law claims against Botts would have arisen from a separate and distinct legal duty from ERISA and that the recovery sought by Dr. McMurtry would not have been for ERISA plan benefits, but instead would have been against Botts individually for his fraudulent inducement and/or procurement to get the Plaintiff to join the plan.  Looking at the claims individually, the fraud claim would have no effect whatsoever against the plan or any of the primary ERISA entities because of the intent requirement needed to prove a fraud claim.  Any claim for fraud asserted by Dr. McMurtry against Botts would have been outside the scope of his employment because it is an intentional tort; thus, regardless of whether or not Botts was acting within the scope of his employment, liability and recovery for that claim could in no way be tied to the ERISA plan.  In reaching its conclusion the Court has attempted to apply the logic used by Judge Gilman in his very well reasoned and instructive opinion in *Briscoe*.  However, the Court is aware that the facts are different.

The claim for negligent misrepresentation presents a different issue than the claim for fraud because the claim could have potentially reached the administrator in this matter, Paul Revere, if Botts would have been sued under that claim.  This Court has already determined that Botts was acting within the scope of his employment at that time.  Further, the Court has noted that Botts, as an agent of the insurer administrator, was an employee who did not administer the

plan, control the plan, interpret the plan and/or have any obligations under the plan as an agent or as a fiduciary. Still, the possibility that an ERISA entity could have been affected by this claim distinguishes it from the claim for fraud. However, any connection to Paul Revere from this claim would have only been indirect. As mentioned *supra*, even if this claim would have gone forward, Dr. McMurtry would not recover benefits from the plan. The recovery by the Plaintiff under this claim would have come from Botts, not the plan. Any damages paid by Paul Revere related to this claim would not have constituted a direct recovery under the plan, and the liability and/or duty of Paul Revere to pay would have come from state law that regulates relations between an employer and employee and the sale of insurance by a company's agent, and not the ERISA plan. The recovery would not have affected the administration of the ERISA plan. The recovery would have not have affected relations between ERISA entities. The Plaintiff's negligent misrepresentation claim would have arisen from a state law claim, and he would not have sought to recover benefits from the plan.

As the Sixth Circuit has not addressed this specific situation within the course of its ERISA review, the analysis applied by the Eighth Circuit in *Wilson* appropriately addresses this matter. As stated in *Wilson* in discussing the impact of the negligent misrepresentation claim:

> If Prudential incurs any liability as a result of this suit, it will do so only as the employer of a tortfeasor, and not as a plan fiduciary. Prudential will not be liable in any way for its administration of the ERISA plan, but rather for the coincidental and unrelated conduct of its agent. Because Prudential does not face any liability incurred by its role as an ERISA entity, its relationship with other ERISA entities cannot be affected by Wilson's suit.

*Wilson*, 114 F.3d at 719. As such, the negligent misrepresentation claim would not have been preempted by ERISA.

In reaching its decision on this issue, the Court wants to articulate that this matter has

been a difficult decision to reach on many levels.  With case law varying from circuit to circuit, and especially within the Sixth Circuit itself, the Court has attempted to consolidate the numerous holdings and interpretations offered by various courts, and apply those to the distinct facts of the instant matter.  The Court does not doubt that this matter could arguably go either way, however, based on the facts of this case, as well as the precedent from within the Sixth Circuit and the guidance from other circuits, the Court feels its decision is the most appropriate result based on the circumstances of the case at hand.

The issue of ERISA preemption is a complicated and complex matter.  Numerous courts have considered the issue, including the United States Supreme Court on numerous occasions. The Court realizes the opinion is burdensomely long.  This in itself emphasizes the complexity of the issue.  The Court does not believe the exact fact pattern has been considered by the Sixth Circuit.  ERISA has not changed, but decisions interpreting preemption have evolved, so to speak.  Certainly in the early years of ERISA, preemption was almost automatic.  Nevertheless, even in the early 1990's courts were recognizing that certain state law tort claims were not preempted.  As courts have examined the duty alleged to have been breached and the overall purpose of ERISA, more state law claims have been found not to be preempted.

Here, the Court has found that certain state law claims are not preempted in the case. However, as noted, the Court believes this to be a very close determination.  Reasonable minds could differ on the conclusion reached by this Court.  This finding by the Court certainly is not conclusive one way or the other as to whether the Defendants violated the standard of care in this

35

case.[8]

### *Whether Botts would have been an Appropriate Party in the Underlying Litigation*

The Defendants contend that even if the claims would not have been preempted by ERISA, the Defendants could not have brought the state law claims against Botts in the underlying litigation.  Though the Court concurs with the Defendants that an *ERISA* action could not have been brought against Botts, that does not mandate that the Plaintiff was precluded from bringing state law claims against Botts individually in the underlying litigation.  No court nor provision within ERISA has explicitly reached the conclusion argued by the Defendants.  Further, the Defendants misstate the law in their reply, when they state that the Plaintiff had a "choice of remedies" when he amended his complaint, in that 1) he could have asserted an ERISA claim against Paul Revere or 2) he could have asserted a state law claim against Botts, but not both.  No body of law supports this contention, especially if the state law causes of action against Botts arise from the same fact scenario, but the legal duty to recover comes from state law and does not relate to the ERISA plan, as determined by the Court in the instant matter.  Accordingly, Botts would have been an appropriate party to assert state law claims against in the underlying litigation.

### *Whether Defendant Hadley should be Dismissed from the Litigation*

Neither party has cited any specific law or statute in support of their position.  However, the Plaintiff refers to the Code of Professional Conduct in his reply, arguing that Hadley had a duty to Dr. McMurtry, regardless of the fact that Wiseman was the supervising attorney and

---

[8]The Court notes that its opinion as to this Motion for Summary Judgment was decided before it decided the Motion for Reconsideration, which addressed whether or not the negligent misrepresentation claim would have failed as a matter of law.

admitted that he had made all the decisions about the case.  The ABA Model Rules of Professional Conduct, Rule 5.2(a), states: "[a] lawyer is bound by the Rules of Professional Conduct, notwithstanding that a lawyer acted at the direction of another person."  Commentary (1) to Model Rule 5.2 states that "[a]lthough a lawyer *is not relieved* of responsibility for a violation by the fact that the lawyer acted at the discretion of a supervisor, that fact may be relevant in determining whether a lawyer had the knowledge required to render conduct in violation of the Rules." (emphasis added).  This rule is supported by the *Restatement of Law Governing Lawyers*, §12(1), which states that "[f]or purposes of professional discipline, a lawyer must conform to the requirements of an applicable lawyer code even if the lawyer acted at the direction of another lawyer or other person."

At this juncture, the Court cannot determine what Hadley knew or did not know regarding whether or not the state law claims should have been made against Botts.  Regardless, the fact that Wiseman made all of the decisions regarding which claims to bring did not relieve Hadley of his duty to Dr. McMurtry.  Accordingly, the malpractice claim against Hadley shall go forward at this time.

## CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **DENIED**.  An appropriate order shall issue.